TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---

FROM: 54001048
TO:
SUBJECT: Re: PRE-SENTENCING MEMORANDUM COVER
DATE: 07/13/2018 09:41:17 AM

UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF NEW YORK
====================================

UNITED STATES OF AMERICA,

    v.                    Case No. 1:17-cr-337 (RJS)

RAHEEM BRENNERMAN,
====================================

---

DEFENDANT PRE-SENTENCING MEMORANDUM

WITH APPENDED PRE-SENTENTING REPORT OBJECTIONS
SUBMITTED PURSUANT TO RULE 32(f) FED. R. CRIM. P.

---

                                          Raheem J. Brennerman
                                          Defendant Pro Se

                                          Metropolitan Detention Center
                                          P O Box 329002
                                          Brooklyn, New York 11232

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---

FROM: 54001048
TO:
SUBJECT: Re: PRE- SENTENCING MEMORANDUM (PART I)
DATE: 07/13/2018 09:13:48 AM

x        Defendant Pro Se, Raheem Brennerman ("Brennerman") submits this pre-sentencing memorandum in support of his arguments for a departure from guideline sentence and from Pre-Sentencing Report ("PSR") recommendation, although the final draft, following the several objections by Brennerman has not been presented to him, as of the time of writing this memorandum. Brennerman has been unable to obtain the necessary demonstrable evidence for a comprehensive submission to the Court, because although this Court ordered on May 16, 2018 at docket no. 154 for Attorney Tulman to obtain discovery from Brennerman's previous counsel and provide the same to him, to-date, although Attorney Tulman obtained the discovery he has not provided them to Brennerman notwithstanding his [Brennerman] numerous pleading with him [Attorney Tulman].

This Court's overarching statutory mandate "is to impose the minimal sentence sufficient to serve the purpose of sentencing. Kimbrough v. United States, 128 S Ct. 558, 570 (2007). Brennerman writes to assist and inform the Court pursuant to that mandate. Brennerman urge the Court to consider the lack of any violence or demonstrable evidence in this matter, defendant's lack of any criminal history prior to the related criminal contempt of court case, defendant's background, the background and circumstances of this case and trial, and the general appearance of the issued highlighted in defendant's correspondences to the Court dated June 24, 2018 and June 27, 2018, all of which should be considered in fashioning the appropriate sentence in this matter.

18 U.S. Code 3553 (a) - The nature and circumstances of the offense and the history and characteristics of the defendant:

In late 2016 or early 2017, Judge Kaplan referred Blacksands and Brennerman, personally, to the United States Attorney's Office for criminal contempt prosecution. Thereafter, on March 3, 2017, the government filed a Petition seeking to initiate criminal contempt proceedings against Blacksands and Mr. Brennerman, personally, including an Order to Show Cause for them to appear in Court to answer the charges. On March 7, 2017, Judge Kaplan summoned AUSAs Robert Sobelman and Nicholas Landsman-Roos to his robing room to advise that an arrest warrant should be issued for Brennerman. The prosecution, consistent with Rule 42, had prepared an Order to Show Cause that would have directed Blacksands and Brennerman to appear before the Court on a date in the future. The Court made clear, however, that it did not agree with the government's approach and advised the prosecutors that the Court should issue an arrest warrant instead as to Brennerman, stating his assumption that "the United States can't find him". The prosecutors repeatedly expressed their view that execution of an arrest warrant was not necessary under the circumstances. The prosecutors advised, first, that Brennerman had actually called them on Friday, March 3, 2017, the same day that the Petition was filed, to talk with them about that Petition. The prosecutors informed Mr. Brennerman that he could not speak with him, and Brennerman then provided his phone number so that "there may be a way for the government to be in touch with him via that telephone number. The prosecutor then proposed that the Order to Show Cause, previously prepared and filed by the government, could be entered to require Brennerman to attend the conference and "should he not appear, [] a summons or arrest warrant be issued to secure his appearance.

The Court continued to press the issue of an arrest warrant, asking "[w]hy shouldn't I, given the history in this case, issue a warrant?". The prosecutor responded with a number of reasons, stating:

> Mr. Brennerman did try to contact the government on Friday, and we
> don't know that he has absconded or seeks to abscond. He's already
> knowledgeable about the petition. His email address is included on the
> ECH notification that went out when the petition was publicly filed.
> He appears to have the resources to have fled had he intended to, and
> the government thinks it's prudent to provide him an opportunity to
> appear at the conference voluntarily.

The prosecution went on to say that, even if the Court issues an arrest warrant, "the government would likely provide Mr. Brennerman an opportunity to surrender rather than dispatching law enforcement to apprehend him without providing that opportunity. The Court pressed on, stating "I'm inclined to issue an arrest warrant "and pushed back against the prospect that Mr. Brennerman should be allowed to surrender. "Now, if the government is going to given him an opportunity to surrender, there's a substantial question as to whether I'm wasting my time because I think the odds are not unreasonable that he will vanish. Eventually the prosecutors deferred to the Court and confirmed that if an arrest warrant was issued, they would discuss in their office how best to proceed. Thus, as of March 7, 2017, when the government entered the robing room, it was prepared to proceed with a contempt proceeding by order to show cause, there was no pending investigation as to Brennerman, there was no pending fraud investigation or any discussion relating to fraud and the government had no concerns

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---

that Brennerman would seek to abscond. Contrary to Judge Kaplan's assertion that the government would not be able to find Brennerman, the government easily determined where Brennerman lived in Las Vegas and arrested him there, at his home, where he had lived since January 2013. Brennerman also had a valid non-driver's identification card issued by the State of Nevada.

Even though, on March 7, 2018 there was no pending investigation as to Brennerman, there was no discussion of fraud, by May 31, 2018, the government had obtained indictment alleging four charges including Conspiracy to commit bank and wire fraud, Bank fraud, Wire fraud and Visa fraud, with the government announcing publicly that it had uncovered a [$300] million fraud and misappropriation of $300 million. To date, no evidence of $300 million fraud or misappropriation of $300 million has been presented by government.

Government Prosecutors, understanding that Brennerman was disfavored following their ex parte conference on March 7, 2017, then immediately initiated fraud charges against Brennerman. Even though Government Prosecutors were in possession of exhibits such as GX 1-57; GX 1-57A, GX 529 and GX 1-73 which reasonably informed them that Brennerman interacted with Morgan Stanley Smith Barney, LLC which is not FDIC, even assuming that opening a wealth management account or becoming entitled to preferential interest rate on credit card and mortgages (which he never applied for or obtain) was a crime, Morgan Stanley Smith Barney LLC is indisputably not FDIC insured and Government interest was attenuated or non existent to initiate this criminal proceeding much less convict Brennerman for Bank fraud. However Government Prosecutors understanding this fact, then fraudulently deceived the Court and Jury when they presented FDIC certificates for Morgan Stanley Private Bank and Morgan Stanley Bank NA, assuming that the Court and certainly the Jury were unlikely to understand the difference between the two institutions - Morgan Stanley Smith Barney and Morgan Stanley Private Bank. With the confidence that Brennerman's trial counsel had conflict of interest issue causing them to be ineffective, prejudicing Brennerman for lack of assistance of counsel at trial. Thus, at trial, Government successfully passed off a non FDIC insured institution - Morgan Stanley Smith Barney as a FDIC insured institution - Morgan Stanley Private Bank. (see evidence at docket 167 in case no. 1:17-cr-337 (RJS).

Government Prosecutors, intentionally ensured that they never requested for, or reviewed the relevant ICBC London lending and underwriting files pertaining to the relevant transaction between Blacksands and ICBC (London) PLC, Government Prosecutors argued at trial that Brennerman through Blacksands had defrauded ICBC (London) PLC, then Government surreptitiously presented documents and files from Brennerman's laptop as well presented Mr. Julian Madgett, an employee of ICBC (London) PLC, who is not a member of the credit committee, responsible for approving the relevant transaction, to confirm which documents or information were material to ICBC (London) PLC in approving the finance. This was done by Government without Government prosecutors, presenting any demonstrable evidence to corroborate his testimony. Moreover Government Prosecutors were already aware that U.S District Court (S.D.N.Y) denied, Brennerman's request for the relevant ICBC London lending files depriving him of the ability to cross-examine Government witness as to credibility or substance, thus depriving Brennerman of his constitutional right to a fair trial. Moreover, (see Government Exhibit 1-19 and 1-22 at docket no. 128); (see also Government Exhibit 1-19 and 1-22 at docket no. 164, exhibit 2) and it becomes very clear and apparent that Government's own witness provided false testimony at trial, because Government's own evidence presented at those dockets contradict the argument and assertions by Government and their witness. But most important at docket no. 168 in case no. 1:17-cr-337 (RJS), is demonstrable evidence of newly discovered evidence which confirms that evidence at docket no. 164, exhibit 3, represents newly discovered evidence which became available on June 6, 2018 after trial and could not have been discovered with diligence prior to or during trial....evidence at docket 164, exhibit 3 - the ICBC London 2017 financial and company disclosure demonstrates that there was no fraud. ICBC (London) PLC a British financial institution mandated to disclose if it became a victim of fraud or became involved with any fraudulent transaction, has not to date represented or disclosed any fraud, even in its 2017 financial and company disclosure covering the pertinent year when Brennerman was prosecuted for alleged fraud. The false proffer and presentment by Government caused prejudicial spillover to other charge of visa fraud, because jurors considering Government's false proffer as to bank and wire fraud and its related conspiracy are inclined to convict on other charges alleging fraud even were evidence was lacking. Moreover, Brennerman suffering prejudice for lack of assistance of counsel at trial.

Government Prosecutors accustomed to false proffer, crossed the line, on June 21, 2018, when they committed perjury - a federal crime, by declaring falsely, under penalty of perjury, at document no. 59 at docket no. 18-1618 in the United States Court of Appeals for the Second Circuit, and at the relevant document nos. at docket nos. 18-1033 and 18-1671, that Brennerman interacted with Morgan Stanley Private Bank, a FDIC insured institution as to Morgan Stanley Smith Barney a non FDIC insured institution. (See also docket no. 149 in case no. 1:17-cr-337 (RJS)). While evidence already within Government's possession contradicted that assertion. (See document no. 82, exhibit A at docket no. 18-1618 in the United States Court of Appeals for the Second Circuit, and at the relevant document nos. at docket nos. 18-1033 and 18-1671). (Also see docket no. 167 in case no. 1:17-cr-337 (RJS)).

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

----------------------------------------------------------------------------------------

    This clearly highlights the falsity in Government proffer and presentment to the Court and the malicious and reckless prosecution by Government Prosecutors for initiating a case when evidence does not even establish statutory jurisdiction much less support their proffer. On July 11, 2018, Brennerman submitted to the United States District Court to remove Government Prosecutors prosecuting this case and refer those Government prosecutors for prosecution. In addition to Brennerman requesting a fatico hearing, through correspondence addressed to the Court dated July 11, 2018, to resolve material dispute as to sentencing.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---

FROM: 54001048
TO:
SUBJECT: Re: PRE-SENTENCING MEMORANDUM (PART II)
DATE: 07/13/2018 09:30:21 AM

At trial, Government presented evidence of Blacksands receiving $4.4 million from ICBC (London) PLC, although the pre-sentencing report incorrectly states $20 million. $15 million of the $20 million was not approved and was subject to an English law security/pledge over account agreement which was executed between Blacksands and ICBC (London) PLC giving ICBC London control over the $15 million held in an ICBC London account subject to approvals of ICBC London which was never initiated or completed. Government Prosecutors never presented the complete documentation for the relevant ICBC London transaction and Brennerman intended to append the English law security/pledge over account agreement to this pre-sentencing memorandum. However although this Court ordered on May 16, 2018 for Attorney Tulman to obtain discovery and provide the same to Brennerman, to date, although Attorney Tulman obtained the discovery on time, he has not provided it to Brennerman thus, Brennerman is unable to appended the required evidence to this pre-sentencing memorandum.

Government's own evidence - GX 1-19 and GX 1-22 appended to docket no. 128 and at docket no. 164, exhibit 2, demonstrate that Blacksands had already incurred and disbursed $6.5 million in satisfying the finance conditions for ICBC London prior to receiving the bridge loan amount of $4.4 million, further that approx. $446,000 from the $4.4 million received was paid by Blacksands back to ICBC London, thus overall Blacksands suffered loss greater than the funds received from ICBC London. However instead, rather than Government Prosecutors focusing on evidence in their possession or obtaining the relevant evidence - the ICBC London lending file, they [Government Prosecutors] erroneously presented $1.5 million paid by Blacksands to Brennerman by claiming that Brennerman committed criminal contempt of court and obstructed justice by failing to provided documents which will show that the $1.5 million was paid to him. However this proffer was erroneous because Government Exhibit 1-19 clearly demonstrate that Brennerman on behalf of Blacksands advised ICBC London on both October 26, 2013 and October 30, 2013 that Blacksands had already incurred $6.45m - $6.5m and that $5 million from the bridge finance will be used to reimburse Blacksands. Then again at page 4 of Govt. Exhibit 1-22, Brennerman again advised ICBC London that $5 million from the bridge finance will be used to reimburse Blacksands for the $6.5 million already incurred and disbursed. Upon Blacksands receiving the $4.4 million from the bridge finance because ICBC London deducted $600,000 to pay their fees from the $5 million, Blacksands was entitled to utilize the funds at will including paying one of its executive officer - Brennerman and $1.5 million representing $720,000 for 2012 salary and $720,000 for 2013 salary in addition to approx. $60,000 in expenses was paid to Brennerman. Furthermore, upon Brennerman receiving his salary payment, he was entitled to utilize the funds at will, including paying for luxury Las Vegas apartment, spa treatment, travel and other expenses without retribution from Government prosecutors, since Government prosecutors ostensibly stated at trial and within other correspondences that Brennerman utilized part of the ICBC London bridge finance to pay for luxury Las Vegas apartment etc. Brenenrman had maintained luxury Las Vegas apartment since January 2013 - almost 12 months prior to receiving salary payment from Blacksands. Additionally, evidence in Government possession - Govt. Exhibit 1-19 and 1-22, clearly demonstrates that ICBC London was aware that the $4.4 million will be used to reimburse Blacksands for the $6.5 million already incurred and paid by Blacksands for satisfying the finance conditions of ICBC London. Moreover the ICBC London lending file which Government Prosecutors refused to obtain or review would have reasonably informed the Government of these understanding by ICBC London.

Raheem Jefferson Brennerman was born in 1978, and raised between London, New York and Switzerland primarily by his mother, although retired now, she was a businesswoman - Diamond broker and textile trader. His step-father who was an oil trader and banker of Nigerian decent also partly raised him. Brennerman was admitted to college (University) at the age of sixteen and holds a Bachelors degree with honors in Economics from the University of London, and a Masters degree in Financial Economics. He began his career in Investment Banking in Mergers and Acquisition and at twenty-three he established his real estate and oil & gas businesses. At twenty-four, he also sponsored his two sisters to college (University) with one of his sister attaining her bachelor degree from the University of Oxford. Brennerman has been the caretaker for his family primarily responsible for his critically ill mother. Brennerman has a fiancee and two step-daughters as part of his immediate family, all of whom have suffered from Brennerman's incarceration since June 1, 2017.

Prior to this charged crime, Brennerman had been involved with in-excess of ten billion United States Dollars (US$10 Billion) in financing and transaction between the oil & gas and real estate businesses without any issues. Brennerman had no prior criminal history and had never been arrested prior to his arrest on April 18, 2017 for the related charge of criminal contempt of Court.

Brennerman established non-profit to achieve his philanthropic endeavors, focusing on education, advance medical research for diabetics and cancer, clean water for the developing world and legal assistance for the wrongfully incarcerated. People have benefited from Brennerman's philanthropic endeavors, including sponsoring Eastern European students to study

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---

in the United States and United Kingdom, a few of whom later, became lawful permanent residents and citizens of the United States and United Kingdom and went on to contribute to others.

18 U.S. Code 3553 (a) - The need for the sentence imposed ((a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (b) to reflect adequate deterrence to criminal conduct (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medial care, or other correctional treatment in the most efficient manner.

     Brennerman is charged and found guilty for opening a wealth management account with Morgan Stanley Smith Barney, LLC a non FDIC insured institution and he became entitled to preferential interest rate for credit lines and mortgages which he never applied for or receive. Furthermore, Brennerman was introduced by Scott Stout an employee of Morgan Stanley Smith Barney LLC to Kevin Bonebrake an employee of Morgan Stanley Investment Bank, which is not FDIC insured to discussed the financing needs of Blacksands, to satisfy one of the finance conditions of ICBC London. Evidence at docket no. 167 demonstrates that Brennerman interacted with Morgan Stanley Smith Barney and not Morgan Stanley Private Bank. Brennerman is also charged with fraud through Blacksands transaction with ICBC (London) PLC, with ICBC London providing a $4.4 million bridge finance to Blacksands after Blacksands incurred and disbursed in-excess of $6.5 million in satisfying the finance conditions of the ICBC London. In addition, Blacksands paid approx. $446,000 to ICBC London from the $4.4 million received. Finally, Brennerman is charged for visa fraud because the agency engaged to complete an online application on his behalf, incorrectly checked the wrong box on the form. And Government presented no demonstrable evidence that Brennerman knew of this error.

     Evidence at (document no. 82 of docket 18-1618 in the U. S. Court of Appeals for the Second Circuit) and at (docket no. 167 in case no. 1:17-cr-337 (RJS)), demonstrate that Government Prosecutors committed perjury, a federal crime, by falsely declaring under penalty of perjury that Brennerman interacted with Morgan Stanley Private Bank, a FDIC insured institution, while all evidence in Government`s possession demonstrate otherwise. In fact such erroneous or false proffer by Government Prosecutors embroils this entire prosecution. Here, even though the evidence at docket no. 167 clearly highlight Morgan Stanley Smith Barney, Government Prosecutors intentionally state Morgan Stanley Private Bank, then without any demonstrable evidence, no relevant lending file - the ICBC London lending file - Government presents documents obtained from Brennerman`s laptop and passes it off as documents provided to ICBC London. To buttress their false argument, Government presented an employee of the bank, who is not involved with the decision to approve the transaction to confirm those evidence that were material to the bank.

     Brennerman pleads for the Court to consider - that Blacksands had already incurred and disbursed in-excess of $6.45 million in satisfying the conditions of ICBC London (see Government Exhibit 1-19 and 1-22 at docket nos. 128 and 164, exhibit 2), prior to receiving $4.4 million from ICBC London, thus had suffered a loss from its interaction with ICBC London. Further, that Brennerman has been prosecuted for Court orders that were never directed at him personally but to Blacksands.

     Here there is no criminal conduct, except for Government`s false presentment of a crime where none exists. Moreover the Government Prosecutors prosecuting this case, themselves, committed perjury - a federal crime, by falsely misrepresenting the evidence in their possession.

18 U.S. Code 3553 (a) - the kinds of Sentence available

     Brennerman pleads to the Court for lenity. Supervised release or home detention will allow Brennerman to continue as caretaker to his family, his critically ill mother, fiance, step-daughters, and other family members, all of whom are affected by Brennerman`s incarceration.

18 U.S. Code 3553 (a) - the kinds of sentence and the sentence range established

     Brennerman was charged in two related crimes - the criminal contempt of court to which he was sentenced to 24 months on May 21, 2018 and the related fraud charge in this instance case which Government argues was the reason for the criminal contempt of Court. Under 5G1.2 (b), If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that constituted part of the same course of conduct as the instant offense and have been fully taken into account in the determination of the offense level of the instant offense (see PSR enhancement for obstruction of justice), or if the prior undischarged term of imprisonment resulted from a federal offense and was imposed pursuant to the Sentencing Reform Act, the Sentence for the instant offense shall be imposed to result in a combined sentence equal to the total punishment that would have been imposed under 5G1.2 (Sentencing on Multiple Counts of Conviction) had all the sentences been imposed at the same time.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

----------------------------------------------------------------------------------------

The sentence for wire fraud and bank fraud, considers the loss factor, and the circumstances of the alleged victim. Here Blacksands had incurred and disbursed $6.5 million to satisfy the conditions of ICBC London (see Government Exhibit 1-19 and 1-22 at docket no. 128 and 164, exhibit 2), prior to receiving $4.4 million from ICBC London, and Brennerman on behalf of Blacksands notified ICBC London that $5 million (net $4.4 million) from the bridge finance will be used to replace the funds that had already been incurred and disbursed (see Government exhibit 1-22, page 4 at docket nos. 128 and 164, exhibit 2). Additionally, Government exhibit adduced at trial, demonstrate that Blacksands paid approx. $446,000 from the $4.4 million received, back to ICBC London. Blacksands already suffered significant financial loss and Brennerman has been incarcerated since June 1, 2017 for this transaction.

Furthermore and as highlighted at docket nos. 168 and 164, exhibit 3. ICBC (London) PLC, the alleged victim has never represented or disclosed that it became a victim of fraud or that it was involved with fraud through the transaction with Blacksands, even though it would be required to make such disclosure pursuant to the regulations in the United Kingdom (England & Wales) governing financial institution and publicly traded companies, if fraud occurred. ICBC (London) PLC is a British financial institution and a subsidiary of Industrial and Commercial Bank of China, headquartered in Beijing, China, the largest financial institution in the World with an estimated asset value in excess of One trillion United States Dollars (US$1Trn).

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---

FROM: 54001048
TO:
SUBJECT: Re: PRE-SENTENCING MEMORANDUM (PART III)
DATE: 07/13/2018 09:38:53 AM

While ICBC London benefits and enjoys the support of a parent company with over a trillion United States Dollars in assets, such is not the same for Brennerman and Blacksands, and the loss suffered by Blacksands Pacific in satisfying the conditions of ICBC London which is approx. $11.25 million (including the approx. $6.5 million paid in interest cost for satisfying the finance conditions of ICBC (London) PLC), is a significant amount to both Blacksands and Brennerman. And although Blacksands had a pending counter-claim against ICBC London, to claim, for the cost incurred for negotiating and satisfying the finance conditions of ICBC London, as ordered by U.S District Court (Judge Kaplan), (see 15cv70 (LAK)). Blacksands was unable to progress the pending counter-claim claim, due to this case and the related criminal contempt of court case.

  Furthermore, under 18 U.S.C 355(a). The district court can consider harsh conditions of the defendant's pre-trial and pre-sentencing confinement, which may be meritorious for a downward departure. Numerous district courts have agreed that the Metropolitan Correctional Center (M.C.C) and Metropolitan Detention Center (M.D.C) are facilities which is harsh and inhumane and thus warrants consideration for a departure. Defendant was incarcerated at MCC between June 1, 2017 until December 19, 2017 and at MDC from December 19, 2017 until the present time.

  The Second Circuit also has upheld the district court's decision in departing downwardly on the grounds of harsh confinement at MCC in a pre-trial and pre-sentencing setting. See United States v. Mendola, S2 03 Cr. 449 (KMW) Honorable Judge Kimba Wood took into consideration Mendola's harsh confinement at M.C.C and departed 10 months from his final sentence. See also United States v. Mateo, 229 F. Supp 2nd 201, 212 (SDNY 2004); see also United States v. Hernandez-Santiago, 92 F.3d 97, 101 n.2 (2d Cir. 1996) to which the court departed three levels based on 22 months of harsh confinement in the United States facility. See also United States v. Lara, 90 F.2d 599 (2d Cir. 1990) in which the court departed from a guideline of 121-151 months to 60 months taking into consideration in part, the defendant's harsh confinement during pre-trial and pre-sentence.

  The harshness of Brennerman's confinement bears on sentencing in so far as one of the purposes of sentencing is to afford just punishment for the offense and respect for the law 18 U.S.C #3553(a)(1). Since his arrest initially between April 19, 2017 and May 10, 2017 and then in May 31, 2017 until present, a period of over 12 months when he is to be sentenced, Brennermnan has been continually confined in a federal pre-trial facility at M.C.C and M.D.C. The facility is not designed for long term stays. See United States v. Behr, 2006 WL 1586563*5 (SDNY 2006) (Sweet, J.) further noting that harsh conditions at M.C.C were recognized by Judge Kimba Wood as a basis for substantial sentence reduction. Inmates movement are severely restricted at all time. They have little opportunity to participate in social programs, very limited access to personal development programs, exercise, physical training or recreation and almost no chance to be outdoors.

  The Supreme Court recognized that because pre-trial confinement is administrative as opposed to judicial form of detention the confinement may not rise to the level of punishment. See Bell v. Wolfish, 441 U.S. 520, 537 (1979). Judge Weinstein of the Eastern District observed. "The inevitable consequences of pre-trial incarceration particularly when prolonged beyond a short period are undeniably severe". United States v. Gallo, F. Supp. 320, 336 (EDNY 1986). In Gaston v. Coughlin, 249 F.3d at 164-65 (2d Cir. 2001) the Second Circuit held that rodent infested units are cruel and unusual punishment. Chief Justice Jack Weinstein also determined that inhumane conditions and lengthy pre-sentence detention conditions amounted to due process violation and therefore is punishment. Judge Weinstein concluded that those subjected to the hardship of lengthy pre-sentence detention under harsh conditions may therefore be meritorious of departure, saying "we cannot measurably alter the conditions of pre-trial and pre-sentencing detention consistent with its limited purposes, but we can alter the length of incarceration."

  Under United States v. Carty, 264 F. 3d 191 (2d Cir. 2001). The unusually harsh conditions at M.C.C are conditions which deprive pre-trial inmates of constitutional rights and have not kept up with the contemporary standards of decency and represents substantially harsher conditions from the conditions the defendant would have experienced if he had been designated at Federal Prison Camp or Low Security. In other words, during the period that the defendant has been incarcerated, he has been punished more than a similarly situated offended who serves the same sentence at a minimum security prison.

  Pre-booker, the Second Circuit held that "Pre-Sentence confinement conditions may in appropriate cases be a permissible basis for a downward departure. " See United States v. Francis, 129 F. 2d 612 (SDNY 2001) (Patterson, J.). Departing one level because of harsh conditions of pre-trial confinement.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

----

Rule 32(f) of the Federal Rules of Criminal Procedure - Objections to Pre-Sentencing Report.

Brennerman appends the objections to the draft Pre-Sentencing Report as if stated within this section of the Pre-Sentencing Memorandum. The said objections were submitted pursuant to Rule 32(f) of the Federal Rules of Criminal Procedure.

CONCLUSION

On these grounds highlighted above, Brennerman is very remorseful and seeking lenity from this Court and respectfully request, that this Court depart from guideline sentence, as well, run any sentence of imprisonment from June 1, 2018, when this Court detained Brennerman, concurrent with the criminal contempt of court sentence, since all the offenses (including the criminal contempt of court to which Brennerman was sentenced to 24 months on May 21, 2018), are all relevant conduct, in reliance on applicable law and federal rules. Furthermore that this Court consider alternative sentences such as supervised release or home confinement in consideration of the issues highlighted above and to allow Brennerman to continue as caretaker for his family including his critically ill mother. Further that Brennerman`s harsh pre-trial and pre-sentence confinement be taken into consideration as did the Honorable Kimba Wood and other District Judges, and to grant a departure to #3553(a).

Brennerman rests and respectfully submits the above without prejudice.

Dated: July 12, 2018
    New York City, New York

RESPECTFULLY SUBMITTED

/s/ Raheem J. Brennerman
Defendant Pro Se