TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - COVER
DATE: 05/18/2019 01:54:56 PM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
===================================

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-                Case No. 1:17-CR-337-RJS

RAHEEM J BRENNERMAN,

        Defendant,
===================================

---

**DEFENDANT RAHEEM BRENNERMAN OMNIBUS MOTION FOR RECONSIDERATION OF MOTION TO DISMISS INDICTMENT; RECONSIDERATION OF MOTION FOR A NEW TRIAL AND COMPLAINT FOR GRIEVANCE AND RELIEF BASED ON PROSECUTORIAL MISCONDUCT.**

---

Raheem J. Brennerman
LSCI ALLENWOOD
P O Box 1000
White Deer, PA 17887-1000

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

------------------------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - PART I
DATE: 05/18/2019 11:01:15 AM

Defendant Pro Se Raheem Brennerman ("Brennerman") respectfully submits this omnibus motion and compliant for grievance and will move this Court for (a.) Reconsideration of the Motion to Dismiss the indictment at (Doc. Nos. 32, 38); (b.) Reconsideration of the denial (as untimely) of the Motion for a New Trial at (Doc. Nos. 229, 230); (c.) Complaint for Grievance (against the prosecutors) and Relief based on Prosecutorial Misconduct. In addition, Brennerman respectfully submits this motion and grievance correspondence in compliance with the relevant parts of The N.Y. Rules of Professional Conduct ("N.Y. Rules"), the Court's Local Rules and all applicable law, in notifying the Court of the prosecutorial misconduct.

The Court's Local Rules provide that all complaints "alleging any ground for discipline....shall be directed to the Chief Judge." Local Rule Civil Rule 1.5(d)(3); Local Criminal Rule 1.1. Thus, in addition to submitting this omnibus motion and complaint to this Court, Brennerman also submits a copy to Hon. Chief Judge Colleen McMahon, to supplant the copy previously submitted at Doc. 229 at 1.

FACTUAL BACKGROUND
(Adopted in part from the order of District Court (Kaplan, J) - August 2017)

The underlying civil case, 15-cv-0070-LAK, arose out of a dispute between ICBC (London) PLC ("ICBC"), a London-based bank, and Blacksands Pacific Group ("Blacksands"), a Delaware Corporation engaged in oil and gas development. ICBC claimed that Blacksands defaulted on a $5 million bridge loan. Blacksands alleged that ICBC reached an agreement to roll the bridge loan into a larger, longer-term financing structure.

I. Undisputed Facts

ICBC, Blacksands and counterclaimant Blacksands Pacific Alpha Blue, LLC ("Alpha Blue"), a Blacksands subsidiary, entered in a bridge loan agreement ("BLA") on November 25, 2013. Under the BLA, ICBC provided a $20 million, 90-day loan to Alpha Blue, which Blacksands absolutely and unconditionally guaranteed. Of the available $20 million, Alpha Blue withdrew $5 million. Neither Alpha Blue, as primary obligor, nor Blacksands as guarantor, repaid the amount owed when it matured in February 2014. ICBC extended the deadline for repayment of principle on two occasions, first on March 31, 2014, and later to July 31, 2014 while still collecting interest payments. After each of these deadlines was missed, however ICBC sent a notice of default to Blacksands.

II. Blacksands Alleged Additional Facts

Blacksands admits that it signed the BLA and that it had not paid its debts thereunder. Instead it contended that it should have been relieved of its obligations under the BLA because the BLA was one part of a larger financial arrangement between Alpha Blue and ICBC. Specifically, Blacksands alleged that the BLA was to serve as a 90-day bridge, the principle of which would roll over into a 5-year, $70 million Revolving Credit Facility ("RCF"). Blacksands intended the $70 million RCF to be part of a larger $500 million capital structure that would fund Blacksands acquisition of an oil field in California. That, Blacksands said, it was not obligated to repay the bridge loan because it was understood by all parties that the principal would roll over into the RCF by the BLA's maturity date and the BLA's interest rate of LIBOR + 9.95 percent would be supplanted by the RCF's rate of LIBOR + 4.5 percent. Blacksands pointed to several pieces of evidence that it alleged created a binding contract obligating ICBC to issue the RCF: (1) an unsigned November 2013 term sheet; (2) a BLA and a potential RCF; (3) and a November 26, 2013 conference call during which Blacksands alleged, ICBC "confirmed that it was going to issue the RCF". In addition, Blacksands alleged that at least part of ICBC's motive for failing to issue the RCF is that ICBC learned in February 2014 that another buyer was interested in the same California oil field that Blacksands intended to purchase. Blacksands pointed out that both the second bidder on the oilfield. Goldleaf Jewelry and ICBC's parent company are Chinese-owned.

III. Procedural History

ICBC initiated the lawsuit on December 8, 2014, in the Supreme Court of New York, New York County, to recover principal and interest allegedly owned by Blacksands under the BLA. The suit was filed under N.Y. CPLR S 3213, which permits plaintiffs suing to enforce instruments for the payment of money only to move for summary judgment immediately in lieu of filing a complaint. Blacksands removed the case to U.S. District Court for the Southern District of New York on January 7, 2015. On February 6, 2015, it and its subsidiary, Alpha Blue, counterclaimed against ICBC, asserting claims for breach of contract, promissory estoppel, unjust enrichment, and fraudulent misrepresentation.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

-------------------------------------------------------------------------------------------------

By order dated September 29, 2015, district court granted ICBC's motion for summary judgment on its claim on Blacksands's guarantee in substantial part its motion to dismiss the counterclaims. It granted also a Rule 54(b) certificate with respect to ICBC's claim against Blacksands. However allowed Blacksands to pursue its counterclaim for cost incurred in negotiating the RCF. The Clerk then entered judgment in favor of ICBC and against Blacksands.

Blacksands appealed. As no supersedeas bond or other security was posted, however ICBC began post-judgment discovery in an effort to locate assets that might be used to satisfy the judgment, serving document requests and interrogatories on or about March 24, 2016.

The First Order

Blacksands interposed objections to the discovery requests. ICBC then moved to compel responses. The Court granted the motion and, on August 22, 2016, directed Blacksands to "comply fully with the outstanding discovery requests within fourteen days of the date of th[e] order.

The Second Order

On September 6, 2016, the day Blacksands was obligated to comply with the August 22, 2016 order (the "First Order"), Blacksand's counsel wrote to the Court and claimed that Blacksands has "agree[d]" to pay the judgment "pending its appeal" and requested the Court's assistance in determining the amount due under the judgment. In reliance on the apparent commitment to pay, ICBC did not immediately seek further relief with respect to compliance with the First Order. The Court, at Blacksands's request, then held two conferences with counsel in what was said by Blacksands to be an effort to determine the amount owing. On September 27, 2016, however at the conclusion of the second conference, the Court entered the following order (the "Second Order").

"On August 22, 2016, this Court directed defendant to comply fully with certain outstanding discovery requests within fourteen days. It has not complied with that order."

"Unless the case is fully and definitively settled on or before October 3, 2016, defendant shall comply fully with those discovery requests no later than 4.p.m. on that date. Any failure to comply with this order may result in the imposition of sanctions, including those associated with contempt of court, as well as in the imposition of coercive sanctions and other relief for civil contempt."

No settlement was reached. Accordingly, Blacksands became obligated under the Second Order to comply fully with ICBC's discovery request by 4.00 p.m on October 3, 2016. It failed to respond.

In the meantime, the Court of Appeals affirmed the judgment against Blacksands.

The Civil Contempt Adjudications

Blacksands

On October 13, 2016, ICBC moved to hold Blacksands in civil contempt. No opposition was filed. Moreover, Blacksands's counsel offered no defense of Blacksands's noncompliance during the contempt hearing. On October 20, 2016, the Court orally held Blacksands in civil contempt and imposed coercive sanctions on it. The Court entered a written order to that effect on October 24, 2016. As will appear, the Court itself was empowered to institute criminal contempt proceedings based on the failure to comply with the orders. It elected, however not to do so. It instead referred the matter to the United States Attorney-as it informed the parties it would for him to consider whether to pursue criminal contempt charges "against Blacksands, [Blacksands's principal, Raheem Brennerman], or anyone else responsible.

Brennerman

during the October 20, 2016 contempt hearing, ICBC previewed also its intention to initiate civil contempt proceedings against Blacksands's principal, Raheem Brennerman, in the event the civil contempt adjudication and coercive sanctions against Blacksands failed to achieve Blacksands's compliance with the Court's order. To that end, ICBC moved the Court for an order directing Blacksands's counsel of record, Latham & Watkins ("Latham"), to disclose contact information for Brennerman so that ICBC could serve him personally with any forthcoming civil contempt motion. The Court deferred ruling on ICBC's request in order to permit Latham to research potential privilege issues implicated by ICBC's request.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

-------------------------------------------------------------------------------------

The next day, Latham informed the Court by letter that it had "provided counsel for ICBC with contact information [for Brennerman] and conveyed to [ICBC's counsel] that he may call [Brennerman] directly." ICBC responded that, although Latham had provided for Brennerman a phone number, email address, and office address, Latham did not disclose Brennerman's residence address which ICBC had reason to believe was in Latham's possession. The Court set a conference on the matter and ordered Latham to bring to Court "all contact information for Raheem J. Brennerman including, but not limited to, his (a) residence address, (b) business addresses, (c) telephone numbers, and (d) email addresses."

It subsequently came to light that Latham did not have Brennerman's residence address. Latham informed the Court of its belief that he was in Switzerland.

In any event, on December 7, 2016, ICBC based on a reasonable documented assertion that Brennerman "controls every aspect of Blacksands existence and operation, "is legally identified" with it, and "has directed its continuing contempt of court" moved by order to show cause to hold Brennerman in civil contempt and to impose coercive sanctions. The Court granted the order to show cause, made it returnable on December 13, 2016 and required the service and filing of any responsive and reply papers at or before 4.00 p.m on December 11 and 12, 2016 respectively. The order to show cause and supporting papers were served electronically (e-mail) on Brennerman himself at 3.50 p.m on December 7, 2016. They were served on Blacksands by personal service on Latham and by mail.

Brennerman's Ex Parte Application

On Sunday, December 11, 2016, Brennerman sent an email to the Court's deputy clerk at his court email address (which was provided to him by Latham). Although the email indicated that copies were sent to lawyers at Latham, it bore no indication that copies were sent to ICBC's counsel despite the fact that Brennerman knew their email addresses.

Attached to the email was a letter by Brennerman to the court. The first two paragraphs requested more time to respond to the contempt motion, stated that Brennerman's choice of counsel to represent him in this matter was the Paul Weiss firm, which was unable to do so (because Judge Kaplan was previously a partner with the firm), and stated that Brennerman was "in the process of engaging new personal counsel" attached to the letter were copied of two emails with respect to his attempt to retain Paul Weiss and a very long "settlement proposal" with respect to the ICBC dispute. There was no indication that the letter and emails were sent to ICBC's counsel.

The Court denied Brennerman's ex parte application the next day but indicated that "[s]hould circumstances warrant, the Court would consider reopening proceedings on the contempt motion."

The Civil Contempt Hearing

On December 13, 2016, the Court convened a hearing on ICBC's motion to hold Brennerman in civil contempt. Neither Brennerman nor counsel on his behalf attended the hearing or filed any papers with the Court. The Court held Brennerman in civil contempt and imposed coercive sanctions on him. A written order to that effect was filed on December 15, 2016. The civil contempt adjudication and sanctions, however, did not result in compliance with the Court's prior orders to produce discovery.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - PART II
DATE: 05/18/2019 09:45:53 AM

The Criminal Action

On March 3, 2017, the government filed in the civil case a petition for an order directing Blacksands and Brennerman "to show cause why they should not be found in criminal contempt." Specifically, the petition charged Brennerman and Blacksands pursuant to Federal Rule of Criminal Procedure 42 with criminal contempt in violation of 18 U.S.C.S 401(3) for allegedly "willfully and knowingly disobeying and resist[ing]" the Court's August 22, 2016 and September 27, 2016 orders. The criminal case was captioned "United States v. The Blacksands Pacific Group, Inc., case no. 17-CR-155 (LAK) and assigned to Hon. Lewis A. Kaplan who had referred Brennerman for prosecution.

The Ex Parte Summon

On March 7, 2017, Judge Kaplan summoned AUSAs Robert Sobelman and Nicholas Landsman-Roos to his robing room to advise that an arrest warrant should be issued for Brennerman. The prosecution, consistent with Rule 42, had prepared an Order to Show Cause that would have directed Blacksands and Brennerman to appear before the Court on a date in the future. The Court made clear, however, that it did not agree with the government's approach and advised the prosecutors that the Court should issue an arrest warrant instead as to Brennerman, stating his assumption that "the United States can't find him." id. at 2-4. The prosecutors advised, first, that Brennerman had actually called them on Friday. March 3, 2017, the same day that the Petition was filed to talk to them about that Petition. id. The prosecutors informed Brennerman that he could not speak with him and Brennerman then provided his phone number so that "there may be a way for government to be in touch with him via that telephone number." The prosecutor then proposed that the Order to Show Cause, previously prepared and filed by the government, could be entered to require Brennerman to attend the conference and "should he not appear, [] a summon or arrest warrant be issued to secure his appearance." id.

The Court continued to press the issue of an arrest warrant, asking "[w]hy shouldn't I, given the history in this case issue a warrant?" Id at 5. The Prosecutors responded with a number of reasons, stating:

> Mr. Brennerman did try to contact the government on Friday, and we
> don't know that he has absconded or seeks to abscond. He's already
> knowledgeable about the petition. His email address is included on the
> ECF notification that went out when the petition was publicly filed.
> He appears to have the resources to have fled had he intended to, and
> the government thinks it's prudent to provide him an opportunity to
> appear at the conference voluntarily.

The Court pressed on, stating "I'm inclined to issue an arrest warrant" and pushed back against the prospect that Brennerman should be allowed to surrender. "Now, if the government is going to give him an opportunity to surrender, there's a substantial question as to whether I'm wasting my time because I think the odds are not unreasonable that he will vanish." id. at 6.

Eventually the prosecutors deferred to the Court and confirmed that if an arrest warrant was issued, they would discuss in their office how best to proceed. id. at 7. Thus, as of March 7, 2017 when the government entered the robing room, there was no pending investigation of fraud as to Brennerman and the government was prepared to proceed with a contempt proceeding by Order to Show Cause, and had no concern that Brennerman would seek to abscond.

Brennerman's Arrest

On April 19, 2017, law enforcement agents (from the Southern District of New York) arrested Brennerman for criminal contempt at his residence in Las Vegas. The government sought an order of detention from the magistrate judge who arraigned Brennerman in the District of Nevada. Brennerman waived his right to bail hearing in Nevada and requested that one be held in the Southern District of New York.

Chief Judge Colleen McMahon, sitting Part One, conducted a bail hearing and on May 4, 2017 granted Brennerman's bail application and imposed certain conditions of release. Judge Kaplan modified those conditions in an order of May 10, 2017.

Indictment of Brennerman on Fraud Charges

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------------------------

Even though as of March 3, 2017 neither Brennerman or Blacksands were under any investigation for fraud and no discussion of fraud had occurred. Approximately two months later, on June 1, 2017, the government informed the Court that an indictment has been unsealed (when Brennerman was re-arrested and arraigned) charging Brennerman "with conspiracy to commit bank and wire fraud, bank fraud, wire fraud and visa fraud, arising out of the defendant's use of Blacksands Pacific and other related corporate entities to fraudulently obtain financing from financial institutions, including [ICBC] and the loan at issue in [ICBC's civil action before the Court] for purported business ventures. "The case was captioned "United States v. Brennerman," case no. 17-CR-337 (RJS) before Hon. Richard J. Sullivan.

The Trials

On September 6, 2017, trial for the criminal contempt of court commenced before Hon. Lewis A. Kaplan and concluded on September 12, 2017 with the jury returning guilty verdict on both counts.

On November 26, 2017, trial for the fraud case commenced before Hon. Richard J. Sullivan and concluded on December 6, 2017 with the jury returning guilty verdict on all four counts.

THE FACTUAL BACKGROUND

(see appropriate factual background contained within the declaration of Raheem Jefferson Brennerman submitted with the Amended Appeal Brief in the criminal contempt of court appeal at document no. 107 at appeal docket no. 18-1618 and at document no. 145 at appeal docket no. 18-1033 in the United States Court of Appeals for the Second Circuit.

The Criminal Contempt of Court Case

Case No. 17-CR-155 (LAK)
District Court Judge: Hon. Lewis A. Kaplan

I. Post Trial Motions

Brennerman trial counsel failed to file any post-trial motions pursuant to Rule 29 and 33 of the Federal Rules of Criminal Procedure. However at 1:17-CR-155-LAK, Doc. Nos. 127, 132, 133, Brennerman filed pro se post-trial motions pursuant to Fed. R. Crim. P. 33 which the court denied as untimely.

II. Sentencing

On March 21, 2018 the court sentenced Brennerman to a term of 24 months concurrent on both counts.

The sentence was in contrast with the Pre-Sentencing Report ("PSR") recommendation of 15 months to run concurrent on both counts, due to enhancement sought by the government and accepted by the court.

III. Issues which caused Prejudice to Brennerman

a.) Judge Kaplan invited plaintiff in the civil case to move for contempt against Brennerman personally, even though he was not a defendant in the civil case, no discovery demands were directed to him, he was never present in the courtroom for discussion on the issue of contempt, and he was not represented by counsel.

b.) On December 7, 2016 Judge Kaplan signed an order to show cause to hold Brennerman in contempt personally completely ignoring the fact that Brennerman and Blacksands had just provided a substantial document production in November 2016, a few weeks earlier.

c.) Judge Kaplan scheduled the contempt hearing against Brennerman for only 4 business days after granting ICBC's order to show cause, and required that opposition papers be filed by 4.00 p.m on a Sunday.

d.) Judge Kaplan then denied Brennerman's request for additional time and proceeded with the contempt hearing in the absence of Brennerman or his counsel

e.) Judge Kaplan made a number of statement indicating bias towards Brennerman including for example: the court "presumed" that the Government would not be able to find Brennerman when there was no basis for that conclusion; the court stated that

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

------------------------------------------------------------------------------------------

"there is a long history in this case of attempts by Brennerman to delay, obscure and avoid various reckonings and the court stated incorrectly that Latham attorneys had reports that Mr. Brennerman had "refused" to provide his address.

f.) Judge Kaplan insinuated himself an unusual extent into the charging process, not merely referring the matter for criminal prosecution but then opposing and overruling the less aggressive actions taken by the prosecutors, replacing the prosecutors filing with a new order to show cause and an arrest warrant and actively worked to persuade the prosecutors to devote Governmental resources to the apprehension of an individual who according to the prosecution, had shown no inclination to "abscond".

g.) At a bail hearing the court made clear its view that Brennerman`s purported failure to provide post-judgment discovery was apparently the most egregious failure to produce that it had ever seen.

h.) The court presumed that Brennerman`s effort to retain- a lawyer at Paul Weiss where Judge Kaplan was previously a partner - had a sinister purpose: to disqualify Judge Kaplan from the case, even though Paul Weiss has been representing Brennerman since 2007.

i.) Judge Kaplan actually investigated and researched Brennerman and then forwarded the material to Judge McMahon in advance of the bail hearing, constituting unusual and extra-judicial activity.

j.) Judge Kaplan issued an order directing that Brennerman`s case be tried by a jury - even though the Government took "no position" as to whether the case should be set for a bench trial or jury trial - indicating that the court had determined to conduct an entire jury trial on the issue on an alleged failure to produce documents as to that he can then sentence Brennerman to more than six months imprisonment if convicted. He ultimately sentenced Brennerman to 24 months for an alleged failure to produce documents.

k.) Judge Kaplan, the complainant that referred Brennerman for criminal prosecution for court order that were directed at Blacksands (a Delaware C Corporation with multiple classes of shares and shareholders) and not to Brennerman himself then presided over the criminal case and trial.

l.) Judge Kaplan then ruled prior to trial denying subpoena to compel evidence: the complete ICBC London records, which Brennerman required to demonstrate that there was no willful and flagrant defiance of the court orders.

m.) At trial, Judge Kaplan ruling caused the preclusion of evidence concerning settlement discussions, particularly with the erroneous jury instruction regarding settlement discussion, while also excluding defendant`s theory from the jury instruction.

n.) At trial, Judge Kaplan ruling caused the preclusion of evidence concerning documents previously provided by the defendant (The Blacksands Pacific Group, Inc) to the plaintiff (ICBC (London) PLC)

o.) At trial, Judge Kaplan admitted evidence of its prior ruling findings of civil contempt, while excluding evidence concerning the circumstances of those contempt findings.

p.) After trial, Judge Kaplan denied Brennerman`s post-trial motions as untimely.

q.) Judge Kaplan held Brennerman, a non party in contempt for discovery purposes without citing any legal authority which the court relied upon in doing so. This was in contrast to prior authority by the United States Court of Appeals for the Second Circuit, 462 F.3d 87; 2006 U.S. App LEXIS 22654. Case at Docket No. 05-4371-cv

The Fraud Case

Case: 17-CR-337-RJS
District Court Judge: Hon. Richard J. Sullivan

I. Post Trial Motions

Brennerman submitted pro se post-trial motions pursuant to Rule 29 and 33 of the Federal Rules of Criminal Procedure at 1:17-CR-337-RJS, Doc. Nos. 128 (supplanting 115), 129, 160, 164, 167, 184. After six to seven months the court denied the motion at sentencing

Brennerman also submitted motions to compel for the pertinent evidence: the ICBC London lending records/files relating to the

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

-------------------------------------------------------------------------------------------------

wire fraud charge and evidentiary hearing relating to the bank fraud charges, however the court denied the motions at 1:17-CR-337-RJS, Doc. Nos. 153, 161, 187, 200

II. Sentencing

Brennerman submitted pro se pre-sentencing memorandum at 1:17-CR-337-RJS, Doc. Nos. 175, 188

On August 8, 2018, the Court appointed Attorney Scott B. Tulman who submitted supplemental sentencing memorandum and exhibits at 1:17-CR-337-RJS, Doc. Nos. 197, 199, 202.

On November 19, 2018, the court imposed sentence of 144 months for Count 1 (Conspiracy to Commit Bank and Wire Fraud in violation of 18 U.S.C.S 1349), Count 2 (Bank Fraud in violation of 18 U.S.C.S 1344) and Count 3 (Wire Fraud in violation of 18 U.S.C.S 1343) and 120 months for Count 4 (Visa Fraud in violation of 18 U.S.C.S 1546(a)) to run concurrently. Even though the Pre-Sentencing Report ("PSR") recommended 120 months with non guideline downward variance. Moreover Brennerman`s request for more time to obtain mitigating exculpatory and evidence for sentencing was denied.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - PART III
DATE: 05/18/2019 09:50:49 AM

STANDARD OF REVIEW

Reconsideration of Pre-Trial Motion to Dismiss Indictment (for lack of subject matter jurisdiction):

Rule 12(b)(2) provides that "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending. "Fed. R. Crim. P. 12 (b)(2). On a pretrial motion to dismiss an indictment pursuant to Rule 12(b), the Court takes the allegations in the indictment as true. See United States v. Goldberg, 756 F.2d 949, 950 (2d Cir. 1985). In addition, "[a]n indictment must be read to include facts which are necessarily implied by the specific allegations made. "United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992).

Federal Rule of Criminal Procedure 12(b)(3) provides that "defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits. "Fed. R. Crim. P. 12(b)(3). Examples are "defect[s] in instituting the prosecution" and "a defect in the indictment or information." Fed. R. Crim. P. 12(b)(3)(A)-(B). Federal Rule of Criminal Procedure 12(c)(3) sets forth the consequences of failing to make a timely motion under Rule 12(b)(3): "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party show good cause." Fed. R. Crim. P. 12(c)(3).

Rule 7(c) of the Federal Rules of Criminal Procedure provides that the indictment "must be plain, concise, and definite written statement of the essential facts constituting the offense charged. "Fed. R. Crim. P. 7(c). Under the appellate standard, the Court does not consider the sufficiency of the evidence at this early stage in the proceedings, but rather focuses on the legal sufficiency of the indictment itself without looking any further. See United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998). "[A]n indictment is sufficient if it, first, contains the elements of which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. "Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974); see also United States v. D'Amelio, 683 F.3d 412, 418 (2d Cir. 2012) (holding that the "core of criminality" of an offense about which a defendant must be on notice "involves the essence of a crime, in general terms.... [and] the particulars of how a defendant effected the crime falls [sic] outside that purview."). Thus, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." Alfonso, 143 F.3d at 776 (quoting Stavroulakis, 952 F.2d at 693).

"The standard for granting a motion for reconsideration is strict, "and such motions "will generally be denied unless the moving party can point to controlling decisions or date that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the [C]ourt, "Shrader v. CSX Transp., Inc., 70 F. 3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted). "A motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made, "nor is it appropriate "to use a motion to reconsider solely to relitigate an issue already decided." Lopez v. Smiley, 375 F. Supp. 2d 19, 21-22 (D. Conn. 2005). See also Mody v. Gen'l Elec. Co., No. 3:04-CV-358 (JCH), 2006 U.S. Dist. LEXIS 24439, 2006 WL 1168051, at *1 (D. Conn. Apr. 26, 2006).

Motion for New Trial (based on Prosecutorial Misconduct, Deprivation and Violation of Constitutional rights, Brady Violation and Others):

A motion for a new trial-particularly one made more than fourteen days after trial-may be granted "only in the most extraordinary circumstances." United States v. Spencer, 4 F. 3d 115, 118 (2d Cir. 1993) (emphasis in original); see also United States v. Gordils, 982 F.2d 64, 72 (2d Cir. 1992) ("We have explained that a district court must exercise great caution in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only in the most extraordinary circumstances."). "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (internal citations and quotations omitted).

Prosecutorial Misconduct:

The Supreme Court has "counseled prosecutors to refrain from improper methods calculated to produce a wrongful conviction [or sentence]." "United States v. Young, 470 U.S. 1,7, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (alterations omitted) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed 1314 (1935)); see Le v. Mullin, 311 F.3d 1002, 1018 (10th Cir.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------------------

2002). Although "the adversary system permits the prosecution to..."strike hard blows, he is not at liberty to strike foul ones."" Id. (quoting Berger, 295 U.S. at 88).

"Generally, there are two ways in which prosecutorial misconduct...can result in constitutional error." Littlejohn, 704 F.3d at 837. "First, it can prejudice a specific right as to amount to a denial of that right." Id. (alterations and quotation omitted). "Additionally, absent infringement of a specific constitutional right, a prosecutor`s misconduct may in some instances render a habeas petitioner`s trial, so fundamentally unfair as to deny him due process." Id. (quoting Donnelly, 416 U.S. at 645). "This determination may be made only after considering all of the surrounding circumstances, including the strength of the state`s case." Malicoat v. Mullin, 426 F.3d 1241, 1255 (10th Cir. 2005). The fundamental unfairness test applies to instances of prosecutorial misconduct occurring in either the guilt or sentencing stage of trial. Smallwood v. Gibson, 191 F.3d 1257, 1257-76 (10th Cir. 1999)

The Sixth Amendment provides that "the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Fifth Amendment provides that "[n]o person shall be...deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Together the guarantee the defendant`s right to a fair trial. See Strickland v. Washington, 466 U.S. 668, 684-85, 104 S. Ct. 2052, 80 L. Ed 2d 674 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment.")

Courts may consult codes of professional responsibility in assessing a prosecutor`s statements. Young, 470 U.S. at 7-9 (citing American Bar Association codes of professional conduct); see Malicoat v. Millin, 426 F.3d 1241, 1257 (10th Cir. 2005) (same). The also may consider the prosecutor`s intent. See Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955) (assessing propriety of comments based on their "manifest[] inten[t]"')' see also Oregon v. Kennedy, 456 U.S. 667, 675-76, 102 S. Ct. 2083, 72 L. Ed 2d 416 (1982) (examining prosecutor`s intent in double jeopardy context to assess whether statements "goad[ed]" defendant to move for a mistrial; United States v. Tafoya, 557 F.3d 1121, 1126 (10th Cir. 2009) (same). But courts "should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning." Donnelly, 416 U.S. at 647.

Prosecutorial misconduct can cause constitutional error in two ways. Underwood v. Royal, 894 F.3d 1154, 1167 (10th Cir. 2018). First, it can prejudice a specific constitutional right amounting to a denial of the right. Id. Second, "absent infringement of a specific constitutional right, a prosecutor`s misconduct may in some instances render a...trial so fundamentally unfair as to deny [a defendant] due process."Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 645, 94 S. Ct. 1866, 40 L. Ed. 2d 431 (1974); see United States v. Anaya, 727 F.3d 1043, 1052-53 (10th Cir. 2013) ("Prosecutorial misconduct violates a defendant`s due process if it infects the trial with unfairness and denies the defendant`s right to a fair trial." (quotations and alterations omitted))

A defendant bears a substantial burden in seeking reversal on the ground that the prosecutors argument to the jury constitutes prosecutorial misconduct. See e.g., United States v. Young, 470 U.S. 1, 11-12, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985); United States v. Millar, 79 F.3d 338, 343 (2d Cir. 1996). In order to obtain reversal of a conviction on the ground that the prosecutors had crossed the boundary between permissible and impermissible argument, the defendant must show that the improper argument caused him substantial prejudice. See., e.g., United States v. Walker, 835 F.2d 983, 988 (2d Cir. 1987); United States v. Nersesian, 824 F.2d 1294, 1327 (2d Cir), cert denied, 484 U.S. 958, 98 L. Ed. 2d 382, 108 S. Ct. 357 (1987); United States v. Modica, 663 F.2d 1173, 1184 (2d Cir. 1981) (per curiam), cert. denied, 456 U.S. 989, 73 L. Ed 1284, 102 S. Ct. 2269 (1982). To determine whether the defendant suffered such prejudice, the court considers the seriousness of the misconduct, the measure adopted by the trial court to cure the misconduct, and the certainty of conviction absent the improper statement, See e.g., United States v. Millar, 79 F.3d at 343; United States v. Walker F.2d at 988; United States v. Modica, 663 F.2d at 1181

As long ago as Mooney v. Holohan, 294 U.S. 103, 112, 79 L. Ed 791, 55 S. Ct. 340, 98 ALR 406 (1935), the court made clear that deliberate deception of a court and juror by the presentation of known false evidence is incompatible with "rudimentary demands for justice." This was reaffirmed in Pyle v. Kansas, 317 U.S. 213, 87 L Ed 214, 63 S. Ct. 177 (1942). In Napue v. Illinois, 360 US 264, 3 L Ed 2d 1217, 79 S Ct 1173 (1959), the court said, "[t]he same result obtains when the State, although not soliciting false evidence allows it to go uncorrected when it appears." id., at 269, 3 L Ed 2d at 1221

GOVERNING RULES & COURT LOCAL RULES:
(N.Y. Rules of Professional Conduct)

The N.Y. Rules of Professional Conduct ("N.Y. Rules") provides in relevant part that "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer..."(See Rule 3.3(a)(1))

The Court`s Local Rules reads in relevant parts: "In connection with activities in this Court, any attorney is found to have

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

engaged in conduct violative of the New York Rules of Professional Conduct as adopted from time to time by the Appellate Division of the State of New York. In interpreting the Code, in the absence of binding authority from the United States Supreme Court or the United States Court of Appeals for the Second Circuit, this Court, in the interest of comity and predictability, will give due regard to decisions of the New York Court of Appeals and other New York State courts, absent significant federal interest."

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - PART IV
DATE: 05/18/2019 12:44:06 PM

DISCUSSION

I. Count 1 (Conspiracy to Commit Bank Fraud in violation of 18 United States Code Section 1349) and Count 2 (Bank Fraud in violation of 18 United States Code Section 1344) of the indictment charged Brennerman in relevant parts with "Brennerman`s Scheme to obtain money from financial institutions through fraud" and stated in relevant parts "Brennerman made false representation to financial institutions in the course of seeking loans and other forms of financing for purported business ventures. When Brennerman successfully obtained money from these financial institutions, he and his co-conspirators misappropriated virtually all of the funds for personal expenses."

At trial, Brennerman was convicted for obtaining wealth management perks. The prosecution argued "Brennerman made misrepresentation to Scott Stout to obtain perks including....American Express "Platinum" card "[a]s a Morgan Stanley perks. And among other things Morgan Stanley paying the annual fee associated with the card if expenditure using the card exceeded $100,000 annually, "[n]o foreign associated fees," and a "20% Travel Bonus." And argued in their [Prosecution] opposition motion to Brennerman`s Post-Trial Motion for relief pursuant to Rule 29 and 33 of the Federal Rules of Criminal Procedure (Fed. R. Crim. P. 29 and 33) (See Doc. No. 149) that "Stout established that these misrepresentation were material to Morgan Stanley Private Bank (emphasis added) because the impacted his decision about how to handle the client relationship with Brennerman and what benefits to try to extend to Brennerman (Tr. 720, 722, 727). "At the hearing on November 19, 2018 when the Court denied Brennerman`s post-trial Rule 29 and 33 motion, the court promulgated the theory of the alleged bank fraud in determining the estimated value of the wealth management perks alleged to have been obtained by Brennerman at US$6,500 which was agreed (in concurrence) by Scott Tulman (appointed counsel for Brennerman).

Based on the theory of the bank fraud. Government presented evidence - GX1-57; GX1-57A; GX529; GX1-73 - the wealth management account opening forms; the e-mail communications with Scott Stout; the wealth management account statement all of which clearly demonstrated that the account was opened at Morgan Stanley Smith Barney LLC and that Scott Stout worked at Morgan Stanley Smith Barney LLC (which was clearly confirmed within GX1-73, notice to recipient section, which informed the recipient that the e-mail was from an employee of Morgan Stanley Smith Barney LLC)

Notwithstanding the overwhelming evidence adduced by Government at trial which clearly demonstrated the lack of jurisdiction on the subject matter because Brennerman`s wealth management account was held at Morgan Stanley Smith Barney LLC, which is not federally insured. Within a few days (at trial) after such presentment of the evidence - GX1-57; GX1-57A; GX1-73; GX529 to the court and jury, the prosecution surreptitiously adduced FDIC certificates of unrelated institutions with similar names - Morgan Stanley Private Bank NA and Morgan Stanley Bank NA - Government Exhibit - GX530, GX532 (namely the entities that are federally insured) and then falsely argued that Brennerman`s wealth management accounts were held at Morgan Stanley Private Bank NA in an effort to falsely satisfy the essential element and jurisdiction requirement necessary to convict for the charged crime of violating 18 U.S.C.S 1349 and 1344.

Morgan Stanley Smith Barney LLC is not federally insured, thus the extension purpose here by the Government offends the balance of federal and state jurisdiction and the Federal Court`s principle of comity by imposing federal law where the federal interest is remote and attenuated. "Fairness and truth-finding are imperative. Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629 79 L. Ed 1314 (1935). For that reason, it is worthwhile to emphasize that the constitution already protects against prosecutors who use false evidence to obtain conviction. Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. Ed. 2d. 1217 (1959); Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed 2d 104 (1972).

The surreptitious deception of the jury by adducing FDIC certificates of unrelated financial institution with similar names in an effort to falsely satisfy the essential element and jurisdiction requirement of the charged crime has a spill-over effect to other counts of the indictment.

The relevant parts of the statute (18 United States Code Section 1344 and 1349) as to Bank Fraud states:

"(a) Whoever knowingly executes or attempts to execute, a scheme or artifice---

    "(1) to defraud a federally chartered or insured financial institution.

All evidence adduced at trial demonstrated absence of fraud on a federally insured financial institution, and therefore

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------------------------------

demonstrates the failure on the part of the government to prove that the district court in New York (United States District Court for the Southern District of New York) has subject matter jurisdiction. Thus the indictment should be dismissed for lack of subject matter jurisdiction and venue.

A true copy of Government`s Exhibit - GX1-57; GX1-57A; GX1-73; GX529; GX530; GX532 are appended as "Exhibit 1"

Note: [The Prosecution] and [Government] refers to the prosecution [United States Attorney Office for the Southern District of New York] on behalf of United States of America

II. Count 1 (Conspiracy to Commit Wire Fraud in violation of 18 United States Code Section 1349) and Count 3 (Wire Fraud in violation of 18 United States Code Section 1343) of the charged indictment alleged fraud with the transaction between ICBC (London) PLC and The Blacksands Pacific Group, Inc. The prosecution arose from the underlying civil case, Case No. 15-cv-0070-LAK captioned ICBC (London) PLC v. The Blacksands Pacific Group, Inc., following the referral by Judge Kaplan.

Prior to trial, Brennerman made requests to both the Prosecution and directly to ICBC (London) PLC for the entire pertinent ICBC (London) lending files and his requests were denied. Because Brennerman was charged in two contemporaneous criminal cases, criminal contempt of court case (1:17-CR-155-LAK) and the instant fraud case (1:17-CR-337-RJS) both stemming from the underlying civil case (1:15-CV-00700-LAK), Brennerman made direct request to the U.S. District Court for the Southern District of New York to issue subpoena (to be served on ICBC London through its New York based counsel, Attorney Paul Hessler, who confirmed at trial of the contempt case that he provided approx. 6,000 pages of related e-mails to the prosecution) for the pertinent ICBC London lending files, however the Court denied his request, stating that ICBC (London) PLC is a foreign financial institution based 3,500 miles from the Courthouse.

During an appearance to hear the pre-trial motion to dismiss the indictment in this instant case in November 2017, Brennerman again sought to issue subpoena to ICBC (London) PLC for the missing pertinent record however the Government argued that they would file motion to squash any subpoena for the ICBC London records. Again, prior to trial, in his [Brennerman] motion-in-limine, he made requests to the Court to exclude testimony of ICBC London arguing that "it would be highly prejudicial and patently unfair for the Government to be able to elicit testimony from its sole witness, Julian Madgett from ICBC London, while Brennerman would lack the ability to challenge his testimony or the Government`s allegations," however his request was denied. At trial, Brennerman once again attempted to issue subpoena to Julian Madgett (Government sole witness from ICBC London) who testified at trial, however his efforts were rebuffed.

A.) Government`s deliberate refusal to produce the ICBC (London) lending file violated the Confrontation Clause and deprived Brennerman of the right under the Compulsory Process guaranteed by the Sixth Amendment, thus causing significant prejudice and Constitutional deprivation and violation:

(1.) Missing from the Government`s case at trial is the failure on the part of the government to prove that the bridge loan was not completed in ICBC (London) in London, United Kingdom, and therefore, the failure on the part of the government to prove that the district court in New York has subject matter jurisdiction. Wire fraud is not an extraterritorial statute and the government failed to prove that the alleged fraudulent scheme was not completed outside the United States. Brennerman had to have the entire ICBC (London) lending files (which he strenuously endeavor to obtain) to disprove the Government`s allegations that the wire fraud was not complete before any use of wires in the United States. Furthermore, Brennerman was deprived of the ability to assert a constitutional right to a meaningful defense of the charged crime.

(2.) Government Exhibit - Exhibits - GX1-19 (see Doc. No. 202, Exhibit B) and GX1-22 (see Doc. No. 202, Exhibit C) e-mails between Brennerman on behalf of Blacksands and Julian Madgett on behalf of ICBC London, a week prior to the approval of the bridge loan, highlighted where Brennerman and ICBC London discussed that ICBC London would not rely on any representation or alleged misrepresentation in the approval of the bridge loan, with ICBC London providing approval confirmation of the bridge loan on November 14, 2013 and the bank (ICBC London) increasing the bridge loan interest from LIBOR + 6.95% to LIBOR + 9.95% to reflect such understanding. Brennerman had to have the entire ICBC (London) lending file to disprove an essential element of the charged crime - Materiality, and that the evidence presented at trial were not material to ICBC London credit committee in the approval of the bridge loan.

(3.) Additionally, Brennerman had to have the entire ICBC (London) lending file because Government were able to elicit testimony from their sole witness from ICBC London, Julian Madgett while Brennerman was deprived of the ability to meaningfully challenge his testimony, which was highly prejudicial and patently unfair and violated Brennerman`s constitutional right to a fair trial.

The deliberate surreptitious act orchestrated by the Government in an effort to violate Brennerman`s Constitutional rights and

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

-------------------------------------------------------------------------------------------------

cause significant prejudice to him was so egregious. This misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." See Darden v. Wainwright, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed 2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974)).

Evidence adduced at trial failed to prove that the district court in New York (U.S District Court for the Southern District of New York) had subject matter jurisdiction or that venue was proper in the Southern District of New York. Thus, the indictment should be dismissed for lack of subject matter jurisdiction.

B.) Brady Violation

Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. ED 2d 215 (1963) ("Brady") requires the prosecution to turn over evidence favorable to the accused where the evidence is material to guilt or punishment. This includes evidence that affects the credibility of witnesses. Wilson v. Beard, 589 F.3d 651 (3rd Cir. 2009). This rule requires disclosure of information actually known to the prosecution and all information in the possession of the prosecutor's office, the police and anyone acting on behalf of the prosecution. A Brady violation has three elements: (1) the evidence is favorable to the accused; (2) the prosecution withheld it and (3) the accused was prejudiced because the evidence was material. Evidence is material if there is a "reasonable probability" of a different outcome had the evidence not been suppressed. United States v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375, 87 L. Ed 2d 481 (1985). The prosecution has the obligation to disclose Brady material. Dennis v. Secretary, 834 F.3d 263, 284 (3rd Cir. 2016). The accused does not have to prove that he would have won the case if the prosecution had disclosed the evidence, but rather he has to show that the failure to produce the evidence undermined the right to a fair trial. The evidence must be reviewed in totality. A different outcome includes an acquittal, hung jury or a conviction on a lesser included offense. Turner v. United States, 137 S. CT. 1885, 1897 (2017). In United States v. Lang, 2019 U.S. Dist. Lexis 65428 (4/17/19, DVI, St. Croix), the court dismissed an indictment charging conspiracy to commit bank robbery and robbery based on the reckless failure to disclose Brady material.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - PART V
DATE: 05/18/2019 01:03:08 PM

Here, the missing ICBC (London) records were actually known to the prosecution. Brennerman required the entire record to disprove the allegation that the scheme to defraud was not complete before the use of any wires in the United States. Moreover, Brennerman required the records from ICBC London to impeach the testimony of Government sole witness from ICBC London, Julian Madgett. Thus, the missing ICBC London record was favorable to the accused - Brennerman. The prosecution withheld it and Brennerman was substantially prejudiced because the ICBC London records were material.

Brady information must be disclosed, furthermore, in a manner that gives the defendant a reasonable opportunity to either use the evidence in the trial or to use the information to obtain evidence for use in the trial. Thus, the Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously. See Leka, 257 F.3d at 100 (noting that Brady disclosures must be in time so that the defense has a sufficient opportunity to use them); id. at 101 ("When...a disclosure is first made on the eve of trial, or when trial is under way, the opportunity to use it may be impaired."); see also DiSimone v. Phillips, 461 F.3d 181, 197 (2d Cir. 2006) ("The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense an opportunity for use.""(quoting Leka, 257 F.3d at 103)). Similarly, disclosures must be sufficiently specific and complete to be useful. See Leka, 257 F.3d at 103 (finding Brady not satisfied where Government did not disclose details of potential witness`s knowledge, because defendant was left to gamble on what witness would say).

In this instant case, Government obtained over 6,000 pages of e-mail exchange from ICBC London through their [ICBC London] New York based attorney, Paul Hessler without requesting for the pertinent ICBC London lending files, even though they [Prosecution] had actual knowledge of those evidence and knew that Brennerman requested those files for his defense. Hence, deliberately refusing to request for the pertinent ICBC London lending records. Moreover prior to trial, Government argued before the Court in November 2017 that they [Government] would file motion to squash any attempt by Brennerman to subpoena the pertinent lending files from ICBC London. At trial, Government present Julian Madgett from ICBC London, again they deliberately refused to collect or produce the ICBC London files even when Government made arrangements for Mr. Madgett to travel from London, United Kingdom to New York, United States to testify at trial. Additionally, after trial, during the restitution phase of the sentence, the court ordered the Government to serve an order on ICBC London which the Government complied with, demonstrating that Government has unfettered access to ICBC London and could have requested for the pertinent ICBC London lending records. Instead Government deliberately refused to produce the ICBC London records with an intentional endeavor to cause prejudice, constitutional deprivation and violation to Brennerman.

Furthermore, Brennerman suffered prejudice for spill-over effect of the wire fraud count to other counts of the indictment.

III. Count 4 of the indictment charged violation of 18 United States Code Section 1546(a), alleging inter alia that Brennerman misrepresented his name, national origins etc. Government then argued to the jury at trial that Brennerman had among others, misrepresented his name, place of birth etc on a visa application. This was argued by Government in an effort to satisfy the essential element necessary to convict for the charged crime. However Government failed to present copy of Brennerman`s birth certificate (which was in their possession) to the court and jury at trial.

Presentment of Brennerman`s birth certificate would have created reasonable doubt and contradicted the proffer by the Government however the jury were deprived of the opportunity to consider that evidence as part of their deliberation as to whether the Government had met its burden into proving beyond all reasonable doubt that Brennerman had violated the federal law - (18 U.S.C.S 1546(a)).

Fairness and truth-finding are imperative. Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed 1314 (1935). For that reason, it is worthwhile to emphasize that the constitution already protects against prosecutors who use false evidence to obtain a conviction. Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L. ED 2d 1217 (1959); Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed 2d 104 (1972); cf. Ferrara v. United States, 456 F.3d 278, 291-297 (1st Cir. 2006) (nondisclosure "so outrageous that it constituted impermissible prosecutorial misconduct sufficient to ground the petitioner`s claim that his guilt plea was involuntary")

During the hearing on November 19, 2018, Government argued, causing the court to promulgate the erroneous proffer by the Government that Brennerman had misrepresented his [status] in the United Kingdom in reference to his prior bail application at (Doc. No. 144) when Brennerman stated that the Government failed to highlight "how having a United Kingdom citizenship made him more of a flight risk." The Government then went on to argue that such assertion by Brennerman warranted several

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------------------

enhancement of the sentencing guideline for obstruction of justice and the court concurred.

This clearly demonstrate substantial prejudice because the prosecution were in possession of Brennerman`s United Kingdom birth certificate, his [Brennerman] United Kingdom passports (issued in his birth name - Raheem Jefferson Brennerman and a second passport issues in the incorrect order of forenames - Jefferson Raheem Brennerman) and a letter from the United Kingdom passport agency dated June 12, 2012 which confirmed that the agency [U.K. Passport and Identity agency] had incorrectly issued the second passport in the incorrect order of forenames. All of which corroborated Brennerman`s assertions contained within his prior bail application at (Doc. No. 144) and the statements made on the visa application. Thus, deception of the court and jury by withholding his [Brennerman] birth certificate (so as to falsely satisfy the essential element necessary to convict for the charged crime in violation of 18 United States Code Section 1546(a)) not only prejudiced Brennerman at trial, because the jury were not afforded the opportunity to consider that evidence in their deliberation and consideration of the overall arguments and presentment, but even at sentencing the prejudice already suffered was exacerbated because of the enhancement to the sentencing guideline. Thus, a rational fact-finder would conclude that Brennerman suffered substantial prejudice stemming from the prosecutorial misconduct.

A true copy of Brennerman`s United Kingdom passports and copy of the letter from the United Kingdom passport agency is appended as "Exhibit 2" (Note: Exhibit 2, evidence is provided in confidence containing privileged information and should not be docketed publicly). Brennerman has also made request to his appointed appeal counsel to provide copies of his U.K. birth certificate which is part of the discovery materials so that it may be submitted to the court for consideration as part of this motion for relief.

RELIEF REQUESTED

I. Reconsideration of Motion to Dismiss Indictment

Brennerman seeks reconsideration of the motion at (Doc. Nos. 32, 38) to dismiss the indictment based on failure on the part of the government to prove at trial that the district court in New York (United States District Court for the Southern District of New York) had subject matter jurisdiction over the bank fraud and wire fraud counts.

The relevant part of the standard for granting motion for reconsideration stipulates the major grounds justifying reconsideration as...an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks omitted).

Here, evidence adduced at trial by the Government represents new evidence since those evidence became available after the denial of Brennerman`s motion for dismissal of the indictment. Moreover there is need to prevent manifest injustice.

Absent the prosecutorial misconduct where the Government surreptitiously adduced evidence of FDIC certificate of unrelated institutions in an effort to deceive the jury into believing that the Government had met its burden to satisfy the essential element and jurisdiction requirement to convict for the charged crime, the evidence adduced at trial, would have demonstrated Government`s failure to prove that the district court in New York had subject matter jurisdiction. Particularly, since the evidence adduced at trial (absent the prosecutorial misconduct) demonstrated absence of fraud on a federally insured financial institution, thus the Federal Court in Manhattan lacked subject matter jurisdiction over the bank fraud count of the indictment. Brennerman`s wealth management account was at Morgan Stanley Smith Barney LLC, his [Brennerman] conviction is not covered by the statute. "United States v. Bouchard, 828 F.3d 116, 125 (2d Cir. 2016) ("[A] defendant cannot be convicted of violating Section 1344(1) merely because he intends to defraud an entity.....that is not in fact covered by the statute.")"

The failure on the part of the government to prove that the bridge loan was not completed in ICBC (London), and therefore, the failure on the part of the government to prove that the district court in New York had subject matter jurisdiction. Wire fraud in not an extraterritorial statute and the government failed to provide that the alleged fraudulent scheme was not completed outside the United States, thus the Federal Court in Manhattan lacks/ed subject matter jurisdiction over the wire fraud count of the indictment.

The wire fraud statute does not apply extraterritorially. RJB Nabisco, Inc v. European Cmty., 136 S. Ct. 2090, 2015-06 (2016) (citing European Cmty. V. RJB Nabisco, Inc., 764 F.3d 129, 139-40 (2d Cir. 2014)); Morrison v. Nat'L Austrl. Bank Lts., 561 U.S. 247, 265 (2010) (rejecting extraterritorial application of statute where no evidence it was intended to apply outside of domestic transactions; United States v. Hawit, No. 15-cr-252 (PKC), 2017 U.S. Dist. LEXIS 23391, at *12 (E.D.N.Y. Feb 1, 2017) ("the federal wire fraud statute, 18 U.S.C.S 1343, does not apply extraterritorially). A complaint alleges a domestic violation of the wire fraud statute only if it ""alleges conduct in the United States that satisfies every essential element"" of the

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

-------------------------------------------------------------------------------------

wire fraud statute. RJB Nabisco, 136 S. Ct. at 2105 (quoting European Cmty., 764 F.3d at 142).

The bank and wire fraud counts of the indictment should be dismissed.

II. Reconsideration of the denial of Motion for a New Trial at (Doc. No. 230)

A motion for a new trial-particularly one made more than fourteen days after trial-may be granted "only in the most extraordinary circumstances." United States v. Spencer, 4 F.3d 115, 118 (2d Cir. 1993) (emphasis in original); see also United States v. Gordils, 982 F.2d 64, 72 (2d Cir. 1992) ("We have explained that a district court must exercise great caution in determining whether to grant a retrial on the ground of newly discovered evidence, and may grant the motion only in the most extraordinary circumstances."). "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice." United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (internal citation and quotations omitted).

In this instant case, letting the guilty verdict stand would be a manifest injustice. Demonstrable evidence appended to this motion (see "Exhibit 1") highlight that Government surreptitiously adduced evidence to deceive the court and jury at trial. This had a spill-over effect to the other counts of the indictment. Moreover Government`s deliberate refusal to produce the ICBC London records caused significant deprivation and violation of Constitutional rights to Brennerman. These are in addition to the Brady violation and deliberately withholding evidence [Brennerman`s U.K. birth certificate] which would have contradicted Government`s proffer at trial. These misconduct (by the prosecution) represent extraordinary circumstance and a new trial should be granted. Pursuant to Rule 45(b) of the Federal Rules of Criminal Procedure, the court could exercise discretion in extending the time to file in light of the prosecutorial misconduct, deprivation and violation of Constitutional rights, Brady violation and others.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: OMNIBUS MOTION - PART VI
DATE: 05/18/2019 01:50:26 PM

On a Rule 33 motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 states that a motion "for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty. "Fed. R. Crim. P. 33(b)(2). While Rule 33 "confers broad discretion upon a trial court," the granting of the motion must be predicated upon the Court's need to avoid perceived miscarriage of justice. United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). Rule 33 motions are typically granted "only in extraordinary circumstances." United States v. Moore, 54 F.3d 92, 99 (2d Cir. 1995); see United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009); United States v. Torres, 128 F.3d 38, 48 (2d Cir. 1997).

Under Rule 33, "a defendant must bring a motion for new trial within 14 days of the verdict or finding of guilt, unless the court finds that the late filing was the product of "excusable neglect," United States v. Brown, 623 F.3d 104, 113 n.5 (2d Cir. 2010) (quoting Fed. R. Crim. P.45(b)(2)); see Eberhart v. United States, 546 U.S. 12, 19, 126 S. Ct. 403, 163 L. Ed 2d. 14 (2005) (holding that Rule 33 is nonjurisdictional and must be read in conjunction with Rule 45(b)). "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made....after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b). A finding of excusable neglect requires consideration of various factors including: (1) "the danger of prejudice to the [non-movant]"; (2) "the length of the delay and its potential impact upon judicial proceedings"; (3) "the reason for the delay, including whether it was in the reasonable control of the movant"; and (4) "whether the movant acted in good faith." United States v. Pauling, 256 F. Supp. 3d 329, 340 (S.D.N.Y. 2017) (quoting United States v. Hooper, 9 F. 3d 257, 259 (2d Cir. 1993)); see United States v. Frederick, 868 F. Supp.2d 32, 44 (E.D.N.Y 2012) (noting that "[T]he determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission") (quoting Pioneer Inv. Servs. Co., 507 U.S. at 395 (footnote omitted)).

Here, Brennerman who is an incarcerated pro se defendant, on March 21, 2018 wrote to the prosecution to request for all the evidence including Brady and Rule materials etc which were presented at trial so that he may promptly prepare his post-trial motions pursuant to Rule 29 and 33 of the Federal Rule of Criminal Procedure. (A copy of the March 21, 2018 correspondence is appended as "Exhibit 3"). The Court had extended the time to file the post-trial motion at the time Brennerman sought to obtain the materials from the prosecution. However the prosecution ignored Brennerman and he [Brennerman] was deprived of the records, evidence and exhibits which he required to prepare his post-trial motions.

Following the deadline for filing the post-trial motion, Brennerman informed the Court that he had been deprived of those records and the Court ordered at (Doc. No. 154) for standby counsel, Attorney Scott B. Tulman to promptly obtain the records from Brennerman's trial counsel, Thompson Hine LLP and provide the materials/records to Brennerman however Attorney Tulman failed to provide the materials to Brennerman. Thereafter, during the appearance on August 6, 2018, Brennerman again informed the Court that he had not been provided the Rule 16 and Brady materials which he requested, and the Court ordered the Government to provide those materials to Brennerman. However the materials provided by Government were incomplete, moreover the facility - Metropolitan Detention Center in Brooklyn, New York where Brennerman was incarcerated restricted his [Brennerman] access to the materials to two hours per week.

In January 2019, Brennerman was transferred to LSCI Allenwood in White Deer, Pennsylvania, where Brennerman was able to gain access to a substantial part of the records he required to prepare a constitutionally meaningful defense and post-trial motion pursuant to Rule 33 of the Federal Rule of Criminal Procedure. Brennerman submits that in light of the issues presented above - prosecutorial misconduct including the fabrication of evidence to satisfy an essential element and jurisdiction requirement, the deprivation and violation of constitutional rights, Brady violation and others, in addition to being deprived of the evidence which he required to present a comprehensive and constitutionally meaningful post-trial motions, he [Brennerman] has met the burden in demonstrating an excusable neglect warranting the court discretion to extend the time for filing his Rule 33 motion.

III. Grievance and Relief (Based on Prosecutorial Misconduct)

The relevant parts of the Court's Local Rules (see Rule 1.5) states:

"In the case of an attorney admitted to the bar of this Court, discipline imposed pursuant to paragraph (b)(1), (b)(2), (b)(3), or (b) (5) above may consist of a letter of reprimand or admonition, censure, suspension, or an order striking the name of the attorney from the roll of attorneys admitted to the bar of this Court."

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------------------------------

"Relief required pursuant to paragraph (b)(4) above shall consist of suspending the attorney from practice before this Court."

Brennerman seeks all available discipline and relief from the prosecutorial misconduct highlighted above.

CONCLUSION

In summary, a reasonable jurist would conclude that Brennerman was substantially prejudiced because of the several prosecutorial misconduct that infects this case - the fabrication of evidence (by surreptitiously adducing FDIC certificates of unrelated financial institution) in an endeavor to falsely satisfy the essential element and jurisdiction requirement necessary to convict, the deliberate refusal to produce pertinent evidence causing significant Constitutional deprivation and violation to Brennerman, and the intentional withholding of evidence which would have created reasonable doubt resulting in a difference verdict.

"Judicial opinions often extol liberty. As well they should when applying a Constitution that begins with a promise to "secure the Blessings of Liberty to ourselves and our Posterity" and prohibits both federal and state governments from depriving a person of that liberty without due process of law. U.S. CONST. Preamble, amends V, XIV. It is difficult to think of greater deprivations of that liberty than the government's allowing someone to be held in prison without telling him that there is evidence that might exonerate him. That tragic situation offends the "twofold aim" of our justice system, "which is that guilt shall not escape or innocence suffer." Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935). Due process requires more than the defendant was afforded here."

"I am reminded of Justice Jackson's famous charge to the federal prosecutor that "[o]nly by extreme care can we protect the spirit as well as the letter of our civil liberties, and to do so is a responsibility of the federal prosecutor." Robert H. Jackson, U.S. Att`y Gen., The Federal Prosecutor, Address at the Second Annual Conference of United States Attorneys in Washington, D.C. (Apr. 1, 1940), in 24 J. Am. Jud. Soc`y 18, June 1940, at 18-20. "[T]he United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and who interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done." Strickler v. Greene, 527 U.S. 263, 281, 119 S. Ct. 1936, 144 L. Ed 2d 286 (1999) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935))."

The instance of misconduct in this cases has a cumulative effect that is greater and more significant than if considered in isolation. See Berger v. United States, 295 U.S. 78, 89 (1935). "This is not the way the criminal process is supposed to work. Of course, federal prosecutors have an obligation to investigate and vigorously prosecute crimes, and to bring wrongdoers to justice. They must represent their client, citizens of the United States, in an impartial and effective manner. In doing so, of course federal prosecutors have a solemn responsibility to act in a way that secures rather than undermines the rights of defendant to the due process of law. In short, they must play by the rules and seek justice in the true sense of the word. That did not happen here, this case could happen to anyone. Although spoken in different circumstances, the word of Chief Judge Kozinski's concurring opinion in United States v. Goyal, 629 F.3d 912, 922 (9th Cir. 2010), resonates: "When the prosecutors have to stretch the law or the evidence to secure a conviction, as they did here, it can hardly be said that such [moral condemnation of society] is warranted." (Bracket material added)."

In summation, the substantial prejudice suffered by Brennerman is clear and demonstrable. Absent the surreptitious endeavor by the Government in deceiving the court and jury by adducing the FDIC certificate of unrelated financial institution, in an endeavor to falsely satisfy the essential element and jurisdiction requirement necessary to convict, or the deliberate refusal to produce the ICBC London lending file in an endeavor to cause significant Constitutional deprivation and violation to Brennerman, and the withholding of evidence which would have created reasonable doubt. A different outcome could have occurred. "It is not whether Brennerman is blameworthy for his alleged transgressions but rather that the rule of law must prevail." Moreover the deception by the prosecution tainted the jury verdict as to call counts due to the spill-over effect on other counts of the charged indictment. Likewise the deliberate refusal to produce the evidence: the entire ICBC London lending files which Brennerman required to disprove the allegation that the district court in New York had subject matter jurisdiction over the wire fraud, as well to disprove materiality of the evidence presented at trial etc, had a spill-over effect to other counts of the indictment.

Defendant Raheem Brennerman, is a pro se defendant, therefore his pleadings are generally liberally construed and held to a less stringent standard than pleadings drafted by an attorney. See Hughes v. Rowe, 449 U.S. 6, 9 (1980) (per curiam); Estelle v. Gamble, 429 U.S. 97 (1976)

For all the foregoing, Brennerman respectfully submits the above in seeking prayer that his requests be granted in its entirety.

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

Defendant Raheem Brennerman apologizes for all errors and omissions.

Dated: May 18, 2019
      White Deer, PA 17887-1000

                                        RESPECTFULLY SUBMITTED

                                        /s/ Raheem J. Brennerman
                                        Defendant

                                        LSCI ALLENWOOD
                                        P O Box 1000
                                        White Deer, PA 17887-1000

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: EXHIBIT 1
DATE: 04/29/2019 08:32:13 AM

xxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT 1

xxxxxxxxxxxxxxxxxxxxxxxxxxx

| | |
|---|---|
| **From:** | BRENNERMAN, R. J @The Executive Office |
| **To:** | Stout, Scott |
| **Cc:** | BRENNERMAN R. J@Executive Office |
| **Subject:** | Re: Morgan Stanley (Wealth Management) |
| **Date:** | Tuesday, January 8, 2013 9:09:49 AM |
| **Attachments:** | Morgan Stanley (Client Profile).pdf |
| **Importance:** | High |

Dear Scott,

As discussed, attached is the completed forms, as advised the account will be in the corporate name however you wanted me to also complete a form with personal information. As discussed, I will require Debit Card and AMEX card with the account.

Please let know what are the next steps.

Best Regards

**From:** Stout, Scott
**Sent:** Monday, December 10, 2012 1:10 PM
**To:** mailto:rbrennerman@blacksandspacific.com
**Subject:** RE: 2013 Preparation

Hi RJ,

Just a reminder to get those forms to me so I can get everything in order prior to our lunch on Friday.

Thanks,
Scott

Scott Stout
F.A. - Wealth Management
MorganStanley
Direct: 310 205 4912
9665 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

http://www.morganstanley.com/fa/scott.stout
scott.stout@morganstanley.com

GOVERNMENT
EXHIBIT
1-57
17 Cr. 337 (RJS)

9665 Wilshire Boulevard
Suite 600 Beverly Hills, CA 90212

MorganStanley
SmithBarney

*Kindly provide all personal information.
For additional owners, please complete a 2nd profile.*

Full Name _KAHEEM JEFFERSON BRENNERMAN_

Address _245 PARK AVENUE, 39 FL_

City _NEW YORK_ State _NEW YORK_ Zip Code _10167_

Home Phone _____ Business _____

Cell _917 699 6430_ Fax _310 861 1057_

SS# or Tax ID ███████████ US Citizen Ⓨ N

Marital Status _SINGLE_ #of Dependents _N/A_ Date of Birth _04/21/78_

E-mail Address _xbrennerman @ blacksands pacific.com_

**Telephone access Prompts**  Mother's Maiden Name _____

**City of Birth**_____ or 1st School Attended _DWIGHT_

Employer _BLACKSANDS PACIFIC ENERGY CORPORATION_

Nature of Business _OIL & GAS_ Occupation _OIL & GAS EXECUTIVE_

Est. Annual Compensation $_720,000 (BASE SALARY)_ Employed Since _2010_

**Primary Source of Income-Check all that apply**

Annual Salary _X_ Investments _X_ Retirement Assets_____ Amount $_____

Est. Total Annual Income (all sources)_____

Est. Liquid Net Worth $_45m_____ Est. Total Net Worth $_____

Tax Bracket (percentile)_____

**Investment Objectives: (*Please rank 1 through 4, in order of priority*)**

  Growth _1 X_ Current Income _3_ Tax Deferred _4_ Liquidity _X 2_

Investing Since (*year*)  Stocks _99_ Bonds _14_ Commodities _01_ Options _02_

Risk Tolerance (check one)  Aggressive ___ Moderate _X_ Conservative _____

Speculation Yes_____ No_____

**_Primary Financial Need:_ (*circle one*)**

(Wealth Accumulation)    Major Purchase    Healthcare    Education
Estate Planning    Retirement    Charity    Income

**Outside Investments:** Firms Used: _____
**Equities** $_____ **Fixed Income** $_____ **Cash** $_____ **Alt Investments**_____
**Time Horizon**_____ **Liquidity Needs** _____

Are you or anyone in your household a major share holder in a publicly traded company? Y Ⓝ
Are you an executive of a publicly traded company? Y Ⓝ
Do you or anyone in your immediate family work for a brokerage house? Y Ⓝ
Is anyone in your immediate family employed by CitiGroup? Y Ⓝ

_[signature]_ 1/5/13

*Please sign and date above*

In order to open your account we are required to obtain this information. Thank you for assisting us.
THIS INFORMATION WILL REMAIN CONFIDENTIAL 02/2012

GOVERNMENT
EXHIBIT
1-57A
17 Cr. 337 (RJS)

9665 Wilshire Boulevard
Suite 600 Beverly Hills, CA 90212

MorganStanley
SmithBarney

*Kindly provide all personal information.*
*For additional owners, please complete a 2ⁿᵈ profile.*

Full Name  JEFFERSON III HOLDINGS LLC

Address  3960 HOWARD HUGHES PARKWAY, SUITE 500

City  LAS VEGAS          State  NEVADA          Zip Code  89169

Home Phone _____    Business _____

Cell  917 699 6430          Fax _____

SS# or Tax ID  ▮▮▮▮▮▮▮▮          US Citizen (Y) N

Marital Status  N/A          #of Dependents _____  Date of Birth _____

E-mail Address _____

**Telephone access Prompts**     **Mother's Maiden Name** _____

**City of Birth** _____  or  **1ˢᵗ School Attended**  DWIGHT

Employer _____

Nature of Business  INVESTMENTS          Occupation _____

Est. Annual Compensation $_____  Employed Since _____

### Primary Source of Income-Check all that apply

Annual Salary _____  Investments _____  Retirement Assets _____  Amount $ _____

Est. Total Annual Income (all sources) _____

Est. Liquid Net Worth $ _____ Est. Total Net Worth $ _____

Tax Bracket (percentile) _____

**Investment Objectives:** *(Please rank 1 through 4, in order of priority)*

      Growth  1   Current Income  2   Tax Deferral  3   Liquidity  4

Investing Since *(year)*      Stocks  99  Bonds  99  Commodities  01  Options  02

Risk Tolerance (check one)      Aggressive _____  Moderate  X  Conservative _____

Speculation Yes _____ No _____

**Primary Financial Need: *(circle one)***

Wealth Accumulation          Major Purchase          Healthcare          Education
(Estate Planning)                  Retirement               Charity               Income

**Outside Investments:**      Firms Used: _____
**Equities** $ _____ **Fixed Income** $ _____ **Cash** $ _____  **Alt Investments** _____
**Time Horizon** _____    **Liquidity Needs** _____

Are you or anyone in your household a major share holder in a publicly traded company?  Y  N
Are you an executive of a publicly traded company?  Y  N
Do you or anyone in your immediate family work for a brokerage house?  Y  N
Is anyone in your immediate family employed by CitiGroup?  Y  N

_____  1/5/13

**Please sign and date above**

In order to open your account we are required to obtain this information.  Thank you for
assisting us.
**THIS INFORMATION WILL REMAIN CONFIDENTIAL** 02/2012

# Morgan Stanley

CLIENT STATEMENT | For the Period January 31, 2013

#BWNJGWM

RAHEEM JEFFERSON BRENNERMAN
245 PARK AVENUE
39 FLOOR
NEW YORK NY 10167-4000

**Your Branch**
9665 WILSHIRE BLVD STE 600
BEVERLY HILLS, CA 90212
Telephone: 310-285-2600
Alt. Phone: 800-458-9838
Fax: 310-285-2696

Client Interaction Center
800-869-3326
24 Hours a Day, 7 Days a Week

Access your accounts online
www.morganstanley.com/online

| | |
|---|---|
| TOTAL VALUE LAST PERIOD (as of 12/31/12) | 0 |
| NET CREDITS/DEBITS | 200,000.00 |
| CHANGE IN VALUE | 0.88 |
| TOTAL VALUE OF YOUR ACCOUNT (as of 1/31/13) | $200,000.88 |
| (Total Values include accrued interest) | |

Your Financial Advisor
Scott Stout

Morgan Stanley Smith Barney LLC. Member SIPC.

GOVERNMENT
EXHIBIT
529
17 Cr. 337 (RJS)

197 - 012515 - 054 - 1 - 0

| | |
|---|---|
| **From:** | BRENNERMAN, R. J @The Executive Office |
| **To:** | Stout, Scott |
| **Cc:** | Gevarter, Mona |
| **Subject:** | Re: Platinum AMEX |
| **Date:** | Wednesday, January 9, 2013 7:24:39 PM |
| **Importance:** | High |

Dear Mona,

Are you able to call me on my cellphone 917 699 6430 regarding the email below

Best Regards

**From:** Stout, Scott
**Sent:** Wednesday, January 09, 2013 4:45 PM
**To:** mailto:rbrennerman@blacksandspacific.com
**Cc:** Gevarter, Mona
**Subject:** Platinum AMEX

RJ,

Please give Mona a call to set up your Platinum AMEX card.  310 205 4751.

As a Morgan Stanley perk, if you spend $100k annually we deposit $500 into your account to cover your annual fee ($450).

Other MS/Platinum Perks Include:
- First Class Lounge Access
- $200 annually in airline fee credits (checking bags, etc)
- No foreign transaction fees
- Premium upgrades for car rentals
- Concierge
- 20% Travel Bonus

Scott Stout
F.A. - Wealth Management
**MorganStanley**
**Direct: 310 205 4912**
9665 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

http://www.morganstanley.com/fa/scott.stout
scott.stout@morganstanley.com

Important Notice to Recipients:

GOVERNMENT
EXHIBIT
1-73
17 Cr. 337 (RJS)

Please do not use e-mail to request, authorize or effect the purchase or sale of any security or commodity. Unfortunately, we cannot execute such instructions provided in e-mail. Thank you.

The sender of this e-mail is an employee of Morgan Stanley Smith Barney LLC ("Morgan Stanley"). If you have received this communication in error, please destroy all electronic and paper copies and notify the sender immediately. Erroneous transmission is not intended to waive confidentiality or privilege. Morgan Stanley reserves the right, to the extent permitted under applicable law, to monitor electronic communications. This message is subject to terms available at the following link: http://www.morganstanley.com/disclaimers/mssbemail.html. If you cannot access this link, please notify us by reply message and we will send the contents to you. By messaging with Morgan Stanley you consent to the foregoing.

**116 New CA Clients** - 116 new legal clients seeking a CA attorney. View their cases today.   Ad ···



## Scott Stout · 3rd

CEO, Co-Founder at MedVector Clinical Trials

El Segundo, California

Message   ···

---- MedVector Clinical Trials

△ University of Arizona

See contact info

500+ connections

MedVector's mission is to advance medicine by streamlining the clinical trial industry. We provide Pharmaceutical & Biotech companies, Contract Research Organizations (CRO) and research institutes a global patient network, which enables them to quickly identify clinical trial candidates, exponentially im...

Show more ⌄

### People Also Viewed


**John Parker Wilson** · 3rd
Financial Advisor at Morgan Stanley


**Jodi Timmons** · 3rd
Financial Advisor of Wells Fargo Advisors


**John Ashworth, CFP®** · 3rd
Financial Advisor at Morgan Stanley


**Lesya Pelyushko** · 3rd
Financial Advisor at Merrill Lynch Wealth Management


**Seraphim "Sam" Rine** · 3rd
Financial Advisor at Morgan Stanley


**Gerald Fils** · 2nd
Financial Advisor at Adventus Veritas


**Andrew Balzerit** · 2nd
Financial Advisor, Wealth Management at Morgan Stanley


**Eric Gibson, CFP** · 3rd
Financial Advisor, Mutual of Omaha Financial Advisors


**Todd Lubin** · 2nd
Financial Advisor at Morgan Stanley


**Seth Deitchman** · 3rd
Financial Advisor at Morgan Stanley

## Experience

**CEO & Co-Founder**
**MedVector Clinical Trials**
Jun 2017 – Present  · 1 yr 1 mo
El Segundo, CA

MedVector's mission is to advance medicine by streamlining the clinical trial industry. We provide Pharmaceutical & Biotech companies, Contract Research Organizations (CRO) and research institutes a global patient network utilizing Telemedicine. This enables researchers to quickly identify and connect to more clinical trial candidates, exponentially improving time to market.

Once suitable candidates have been identified, MedVector connects our research clients to trial participants utilizing a state of the art, HIPAA compliant, telemedicine network, allowing them to virtually move patients to clinical trial site-locations from anywhere in the world.

Our process allows clinical trial sites (locations) to capture marketshare, creates economies-of-scale by removing redundancies in the current marketplace, creates revenue for hospitals not conducting clinical trials, gives remote populations access to cutting edge medicine, and significantly expedites the process of bringing life saving, advanced medicine to market.

To learn more visit: www.MedVectorTrials.com

**Financial Advisor**
**Wells Fargo Private Bank**
Oct 2014 – Apr 2018  · 3 yrs 7 mos
Los Angeles, California

Built a Wealth Management team within the Private Bank, incorporting Wealth Managers, Portfolio Managers, Private Bankers and Financial Advisors.

**Financial Advisor**
**Morgan Stanley Wealth Management**
May 2011 – Nov 2014  · 3 yrs 7 mos
Beverly Hills

Investments

**D & S Investments**
Jan 2008 – May 2011  •  3 yrs 5 mos

Advised a Family Office regarding options strategy.

## Education

University of Arizona

**University of Arizona**
Bachelor of Science (BS), Marketing
1997 – 2002
Activities and Societies: Delta Chi

🔍 Search

A Board Position for You - These companies need board members. Click here to be matched with them.  Ad ···

Premium



▷

Brand yourself.
Properly.

Shop Stickers    ◊ MOO

## Scott Stout · 3rd

**CEO, Co-Founder at MedVector Clinical Trials**

El Segundo, California

| InMail | ··· |

┄ MedVector Clinical Trials

 University of Arizona

🔲 See contact info

👥 500+ connections

MedVector's mission is to advance medicine by streamlining the clinical trial industry. We provide Pharmaceutical & Biotech companies, Contract Research Organizations (CRO) and research institutes a global patient network, which enables them to quickly identify clinical trial candidates, exponentially improving time to market.

Once suitable candidates have been identified, MedVector connects our research clients to trial participants utilizing a state of the art, HIPAA compliant, telemedicine network, allowing them to virtually move patients to clinical trial site-locations from anywhere in the world.

Our process allows clinical trial sites (locations) to capture marketshare, creates economies-of-scale by removing redundancies in the current marketplace, creates revenue for hospitals not conducting clinical trials, gives remote populations access to cutting edge medicine, and significantly expedites the process of bringing life saving, advanced medicine to market.

Show less ⌃

Promoted    ···

 A Board Position for You
These companies need board members. Click here to be matched with them.  ⟩

 Google Data Studio (beta)
See All Your Marketing Data in Beautiful, Shareable Reports. For Free.  ⟩

 Become a Social Worker
Earn Your MSW Online from USC. No GRE Required.  ⟩

## Experience

 **CEO & Co-Founder**
MedVector Clinical Trials
Jun 2017 – Present · 1 yr 1 mo
El Segundo, CA

MedVector's mission is to advance medicine by streamlining the clinical trial industry. We provide Pharmaceutical & Biotech companies, Contract Research Organizations (CRO) and research institutes a global patient network utilizing Telemedicine. This enables researchers to quickly identify and connect to more clinical trial candidates, exponentially improving time to market.

Once suitable candidates have been identified, MedVector connects our research clients to trial participants utilizing a state of the art, HIPAA compliant, telemedicine network, allowing them to virtually move patients to clinical trial site-locations from anywhere in the world.

Our process allows clinical trial sites (locations) to capture marketshare, creates economies-of-scale by removing redundancies in the current marketplace, creates revenue for hospitals not conducting clinical trials, gives remote populations access to cutting edge medicine, and significantly expedites the process of bringing life saving, advanced medicine to market.

To learn more visit: www.MedVectorTrials.com

**Financial Advisor**
Wells Fargo Private Bank

Messaging ✉ 🔽

Reactivate
Premium

Built a Wealth Management team within the Private Bank, incorporting Wealth Managers, Portfolio Managers, Private Bankers and Financial Advisors.



**Financial Advisor**
Morgan Stanley Wealth Management
May 2011 – Nov 2014  •  3 yrs 7 mos
Beverly Hills

**Options Trader**
D & S Investments
Jan 2008 – May 2011  •  3 yrs 5 mos

Advised a Family Office regarding options strategy.

## Education



**University of Arizona**
Bachelor of Science (BS), Marketing
1997 – 2002
Activities and Societies: Delta Chi

## Interests

| | |
|---|---|
| **University of Arizona**<br>214,411 followers | **Barrington Legal, Inc.**<br>40 followers |
| **MedVector Clinical Trials**<br>4 followers | **Delta Chi Fraternity**<br>5,471 members |
| **University of Arizona Alumni**<br>34,140 members | **Fortis Partners**<br>1,045 followers |

See all

# Morgan Stanley Smith Barney is Now Morgan Stanley Wealth Management

## Sep 25, 2012

### Morgan Stanley's U.S. Wealth Management Business Has a New Name Following Largest-Ever Integration in the Wealth Management Industry

**New York ---**

Morgan Stanley (NYSE: MS) today announced that its U.S. wealth management business, Morgan Stanley Smith Barney, has been renamed Morgan Stanley Wealth Management (MSWM).

Morgan Stanley Wealth Management is an industry leader, managing $1.7 trillion in client assets through a network of 17,000 representatives in 740 locations.  Morgan Stanley on September 11 announced an agreement with Citigroup to increase its majority ownership of MSWM such that Morgan Stanley will assume full control by June of 2015, subject to regulatory approval.  The business was formed in 2009 as a joint venture between Morgan Stanley and Citi's Smith Barney.

"Today, as we move under one name, we are culminating a three-year effort to integrate two outstanding franchises," said James Gorman, Chairman and Chief Executive Officer of Morgan Stanley.  "The Smith Barney name stood for investment excellence for three-quarters of a century, and Morgan Stanley Wealth Management will provide the first-class service that has distinguished Morgan Stanley as a firm for more than 75 years.  Going forward, we remain focused on being the world's premier wealth management group."

Said Greg Fleming, President of Morgan Stanley Wealth Management, "Today, we are one integrated business, with one overarching mission: to earn the trust of our clients every day

through superior advice and execution.  Our name has changed to reflect our integration, but our mission remains the same: We are committed to helping our clients reach their financial goals."

The broker-dealer designation for Morgan Stanley Wealth Management will remain "Morgan Stanley Smith Barney LLC."

Morgan Stanley Wealth Management, a global leader in wealth management, provides access to a wide range of products and services to individuals, businesses and institutions, including brokerage and investment advisory services, financial and wealth planning, credit and lending, cash management, annuities and insurance, retirement and trust services.

Morgan Stanley (NYSE: MS) is a leading global financial services firm providing a wide range of investment banking, securities, investment management and wealth management services.  The Firm's employees serve clients worldwide including corporations, governments, institutions and individuals from more than 1,200 offices in 43 countries.  For further information about Morgan Stanley, please visit www.morganstanley.com.

Media Relations Contact:

Jeanmarie McFadden, 212.761.2433

Jim Wiggins, 914.225.6161



# FEDERAL DEPOSIT INSURANCE CORPORATION

W A S H I N G T O N, D. C.

DUPLICATE

Hereby certifies that the deposits of each depositor in

**MORGAN STANLEY PRIVATE BANK, NATIONAL ASSOCIATION**

**PURCHASE**

**NEW YORK**

are insured to the maximum amount provided by the

Federal Deposit Insurance Act

No. 34221

Attest

Robert E. Feldman

EXECUTIVE SECRETARY

In testimony whereof, witness my signature and the seal of the

Corporation this **1ST** day of **JULY 2010**

Sheila C. Bair

CHAIRMAN OF THE BOARD OF DIRECTORS

GOVERNMENT
EXHIBIT
530
17 Cr. 337 (RJS)

# FEDERAL DEPOSIT INSURANCE CORPORATION

W A S H I N G T O N , D . C .

DUPLICATE

Hereby certifies that the deposits of each depositor in



**MORGAN STANLEY BANK, NATIONAL ASSOCIATION**

**SALT LAKE CITY**

**UTAH**

are insured to the maximum amount provided by the

Federal Deposit Insurance Act

No. 32992

Attest _____

EXECUTIVE SECRETARY

In testimony whereof, witness my signature and the seal of the
Corporation this 23RD day of SEPTEMBER, 2008.

_____

CHAIRMAN OF THE BOARD OF DIRECTORS

GOVERNMENT
EXHIBIT
532
17 C., 337 (RJS)

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: EXHIBIT 2
DATE: 04/29/2019 08:32:20 AM

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT 2

DO NOT DOCKET

NOTE:

The documents/evidence contained within this exhibit is confidential and privileged. It is provided in confidence and should not
be disseminated or docketed publicly without the expressed consent of Raheem Jefferson Brennerman which is expressly
reserved.

Written by:
Raheem J. Brennerman

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Request to Return Current Passport for Cancellation v1.2



Home Office

# Identity &
# Passport Service

Aragon Court
Northminster Road
Peterborough
Cambridgeshire
PE1 1QG

**Tel**   (01733) 888630
**Fax**   (01733) 888142

Date 19th June 2012

Mr Raheem J Brennerman

████████████████



LONDON

███████

Our ref: Passport no: ██████ / Application no: 226922537

Dear Mr Raheem,

We refer to a second passport that we have recently issued you with.

During an audit we have become aware that this passport has been issued incorrectly and will need to be reissued to reflect your correct order of forenames.

We request that in the meantime you avoid using this passport for travel as it may cause difficulties at some ports of entry.

We would be most grateful if you would call our office at your earliest opportunity.

The Counter
Aragon Court
Northminster Road
Peterborough
Cambridgeshire
PE1 1QG
01733 888630

Please Note: The above passport may be automatically cancelled if you do not return it with this letter to the above address within three calendar months and will no longer be valid for travel.

Yours sincerely

Mr. Amarjit S Nanuwa

For advice on how and where to obtain a passport,
call the Passport Adviceline on **0870 521 0410**
(24 hours a day, 7 days a week).

You can also email hqenquiries@ips.gsi.gov.uk
or visit www.ips.gov.uk



INVESTOR IN PEOPLE



CUSTOMER SERVICE EXCELLENCE

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: Re: EXHIBIT 3
DATE: 04/29/2019 08:31:37 AM

xxxxxxxxxxxxxxxxxxx

EXHIBIT 3

xxxxxxxxxxxxxxxxxxx

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: BRO-I-B

---------------------------------------------------------------------------------------------

FROM: 54001048
TO: Todd, Natali
SUBJECT: Re: AUSA CORRESPONDENCE (03.21.18)
DATE: 04/01/2018 09:02:28 PM

x

                                   Raheem J. Brennerman (54001-048)
                                   Metropolitan Detention Center
                                   P O Box 329002
                                   Brooklyn, New York 11232

Robert Sobelman
Nicholas Roos
Assistant United States Attorneys
U.S Department of Justice
United States Attorney Office
One St Andrew`s Plaza
New York, New York 10007

                                   March 21, 2018

               Re: United States v. Raheem J. Brennerman (Case No. 17 CR. 155 (LAK))
                    United States v. Raheem J. Brennerman (Case No. 17 CR. 337 (RJS))

Dear Mr. Roos and Sobelman:

       Defendant, Raheem Brennerman pro se, submits pursuant to his sixth amendment rights, and requests that the government provide him with electronic copies of all brady materials, evidence(s), correspondences, giglio materials previously provided to Thompson Hine LLP or any new materials received following the trials, in respect of the above cases, so that defendant may adequately prepare his defenses and post trial motions as well prepare for all other post trial proceedings.

       Defendant, further requests for a detailed inventory of all papers, properties and effects seized from the defendant at his residence in Las Vegas, Nevada and at Hoboken Hotel in New Jersey. I understood that the government had offered to return six (6) or more electronic devices, please confirm, and I will arrange to collect them.

       Furthermore, defendant, specifically requests for paper copy of the exhibit presented at trial before Honorable Judge Sullivan which detailed the use (disbursement) of the $4.4 million bridge loan funds, received by Blacksands Pacific Alpha Blue LLC from ICBC (London) plc. The requested exhibit detailed the total payments made to law firms and other professionals in various categories. And Government exhibits labeled 415, 1-19 and 1-22 appended to the rule 29 and 33 motion.

Defendant, submits the above, without prejudice and awaits your response and compliance.

Dated: March 21, 2018
      Brooklyn, New York

                                     Very truly yours,

                                     /s/ Raheem J. Brennerman
                                     Defendant



U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
MAY 20, 19
AMOUNT
$0.00
R2305K139972-02

10007
1000

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL

7018 0360 0001 6678 4049

<54001-048>
Raheem J Brenneman
FCC Allenwood LOW
1000 P O Box
Union B Unit
White DEER, PA 17887-1000
United States

RECEIVED
2019 MAY 23  AM 9:22
SDNY PRO SE OFFICE

RETURN RECEIPT
REQUESTED

The Honorable Richard J. Sullivan
United States Circuit Judge
The Southern District of New York
Thurgood Marshall U.S Courthouse
40 Foley Square
New York New York  10007