UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-v-<br><br>RAHEEM J. BRENNERMAN,<br><br>                  Defendant. | No. 17-cr-337 (RJS) |
| RAHEEM J. BRENNERMAN,<br><br>                  Plaintiff,<br><br>-v-<br><br>UNITED STATES OF AMERICA,<br><br>                  Defendant. | No. 23-cv-1624 (RJS)<br><br>ORDER |

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

Defendant Raheem J. Brennerman, proceeding pro se, submitted the attached letter, dated May 11, 2023, seeking "appropriate relief" for purported violations of his human, civil, and constitutional rights in connection with his criminal case. Brennerman is reminded that the Court denied his habeas petition on January 3, 2023 (Doc. No. 289) and his motion for reconsideration on January 25, 2023 (Doc. No. 291), and that there is no motion for relief currently pending before the Court. Brennerman is also advised that successive habeas petitions must be directed to the United States Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2255(h); 28 U.S.C. § 2244(b)(3).

The Clerk of Court is respectfully directed to docket this order and the May 11, 2023 submission attached hereto. The Clerk of Court is further directed to terminate the motion at Doc. No. 296 and to mail a copy of this order to Raheem J. Brennerman.

SO ORDERED.

Dated:      May 22, 2023
            New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: SUBMISSION TO COURT (17-cr-0337 (RJS))
DATE: 05/11/2023 05:53:40 PM

x

Raheem J. Brennerman
Reg. No. 54001-048
FCI Allenwood Low
Federal Correctional Institution
P. O. Box 1000
White Deer, Pa. 17887-1000

Hon. Richard J. SULLIVAN
UNITED STATES DISTRICT COURT
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

-and-

Ruby KRAJICK
Clerk of Court
UNITED STATES DISTRICT COURT
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

May 11, 2023

BY CERTIFIED FIRST CLASS MAIL

Regarding: United States v. Brennerman, Case no. 1:17-cr-0337 (RJS)
RESPONSE TO ORDER AT EFC NOS. 289, 291 AND NOTIFICATION OF VIOLATION
OF THE LAW/DEFENDANT'S HUMAN, CIVIL & CONSTITUTIONAL RIGHTS, IN
SEEKING APPROPRIATE RELIEF (THE "RELIEF")

Dear Judge Sullivan:

Defendant Pro Se Raheem J. Brennerman ("Brennerman") respectfully submits this correspondence in response to this

Court's order at EFC Nos. 289, 291 and to notify this Court of its violation of the law/Defendant's human, civil and

Constitutional rights, in seeking appropriate relief (the "Relief").

DISCUSSION:

On June 24, 2018, Brennerman submitted at: 1:17-cr-0337 (RJS), EFC No. 167, copies of Government exhibits - GX1-57;

GX1-57A; GX529: GX 1-73 which were adduced at trial to demonstrate that he (Brennerman) interacted with Scott Stout and

Morgan Stanley Smith Barney, LLC where he (Brennerman) opened his wealth management brokerage account.

Brennerman's aforesaid submissions was to bolster his argument for judgment of acquittal pursuant to Rule 29 of the

Federal Rule of Criminal Procedure (Fed. R. Crim. P. 29), arguing that all evidence adduced by the Government at trial

demonstrated and highlighted that his interaction was with Morgan Stanley Smith Barney, LLC and that Government witness,

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B
----------------------------------------------------------------------------------------------------

Barry Gonzalez, the FDIC commissioner testified that Morgan Stanley Smith Barney, LLC was not FDIC insured hence there

was no federal jurisdiction to even indict (charge) him (Brennerman) much less prosecute and conviction him for bank fraud

and conspiracy to commit bank fraud. The basis for the motion pursuant to Rule 29 of the Federal Rule of Criminal

Procedure was for this Court to acquit him of the bank fraud charges even where the jury had capriciously convicted him

because jurors are unfamiliar with the legal standards and the law.

A copy of the submission at: 1:17-cr-0337 (RJS), EFC No. 167 is appended to this correspondence as "Exhibit C"

On November 19, 2018, during sentencing at: 1:17-cr-0337 (RJS), EFC No. 206 (Sentencing Tr. 19:12-22), Judge Sullivan

stated:

> ".....But the bank fraud was a scheme or artifice to defraud the private banking arm of Morgan Stanley
> to enable Mr. Brennerman to get access to the perks which are tangible. They're worth money, free checking,
> among them. I don't get that. And some other perks. But also to get more intangible perks, which would
> be access to other arms of the Morgan Stanley family of entities.
>
> I'm only really focused on the first category here. It seems to me the first category here, there's been no
> evidence that I've seen that suggests that was worth more than $6,500 or so."

A copy of the excerpt from the Sentencing Transcript cited above is appended to this correspondence as "Exhibit A"

On November 19, 2018, Judge Sullivan made such promulgation after denying the motion for judgment of acquittal filed

pursuant to Rule 29 of the Federal Rule of Criminal Procedure (Fed. R. Crim. P. 29), where argument was that evidence

adduced at trial demonstrated that Brennerman interacted with Morgan Stanley Smith Barney, LLC where he maintained a

wealth management account. And that trial testimony demonstrated that Morgan Stanley Smith Barney, LLC is not FDIC

insured, hence there was no violation of the federal bank fraud statute or jurisdiction to convict him. See 1:17-cr-0337

(RJS), EFC No. 167. However, Judge Sullivan denied the motion arguing that Brennerman defrauded the private banking arm

of Morgan Stanley which is FDIC insured. See 1:17-cr-0337 (RJS), EFC No. 206:19. Judge Sullivan then proceeded to

sentence Brennerman.

On November 7, 2021, Brennerman signed and submitted a 442 page Omnibus motion including Collateral Attack petition at:

1:17-cr-0337 (RJS), EFC No. 269. Supplemental papers and exhibits in support of the Omnibus motion was submitted at:

1:17-cr-0337 (RJS), EFC Nos. 270, 272, 274, 288. Among others, the crux of the argument presented was that Brennerman

never or rather did not interact with the private banking arm of Morgan Stanley which is FDIC insured because all evidence

adduced by Government at trial demonstrated that Brennerman interacted with Morgan Stanley Smith Barney, LLC which is

not FDIC insured. Further that to convict Brennerman of bank fraud and its related conspiracy, the institution which he

interacted with must be FDIC insured.

On January 3, 2023 (in-excess of 4 years after November 19, 2018), in adjudicating Brennerman's Omnibus motion including

Collateral Attack petition to vacate the judgment and set-aside the sentence pursuant to 28 United States Code Section

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

2255 (28 U.S.C.S. 2255) at: 1:17-cr-0337 (RJS), EFC Nos. 269, 270, 272, 274, 288. Judge Sullivan promulgated at: 1:17-cr-

0337 (RJS), EFC No. 289:pgs. 6-7 that:

> "........As an initial matter, the record reveals that Brennerman's counsel vigorously pursued the FDIC issue
> before the jury. For instance, counsel elicited testimony from a government witness that Morgan Stanley
> Smith Barney, LLC was not insured by the FDIC. (Tr. at 1059:9-11.) He further elicited testimony that affiliate
> entities within a corporate family - like Morgan Stanley Smith Barney, LLC and Morgan Stanley &
> Company, LLC - must obtain "separate certificate[s] of insurance to be FDIC insured." (Tr. at 1060:24-1061:5).
> In summation, Brennerman's counsel again argued that "the law absolutely requires that the bank...targeted
> in a fraud....be insured by the FDIC" (Tr. at 1538:9-10), and that "Brennerman was not looking to
> take....money" from "wealth management arm of Morgan Stanley.....the only arm of Morgan Stanley [at issue]
> that was FDIC insured" (Tr. at 1539:9-14). In short, Brennerman's allegation that his counsel failed to press the
> FDIC argument before the jury is plainly contradicted by the record"

A copy of the excerpt from Judge Sullivan's January 3, 2023 promulgation cited above is appended to this correspondence as

"Exhibit B"

Judge Sullivan's Jan. 3, 2023 promulgation at 1:17-cr-0337 (RJS), EFC No. 289:pgs. 6-7 was in significant contradiction

to his prior promulgation on November 19, 2018 at: 1:17-cr-0337 (RJS), EFC No. 206:19 when he (Judge Sullivan) sentenced

Brennerman, specifically the statement: "....For instance, counsel elicited testimony from a government witness that

Morgan Stanley Smith Barney, LLC was not insured by the FDIC. (Tr. at 1059:9-11)..." demonstrates, first, that the Court

(Judge Sullivan) lacked jurisdiction to convict and sentence Brennerman for conspiracy to commit bank fraud in violation of

18 United States Code Section 1349 (18 U.S.C.S. 1349) and bank fraud in violation of 18 United States Code Section 1344

(18 U.S.C.S. 1344). Second, that Brennerman did not violate the federal bank fraud statute. Third, that Judge Sullivan

intentionally misrepresented (fabricated) the evidence on November 19, 2018 at 1:17-cr-0337 (RJS), EFC No. 2016:19, by

surreptitiously supplanting Morgan Stanley Smith Barney, LLC ("MSSB") which is not FDIC insured (and all evidence adduced

at trial demonstrated Brennerman interacted with) with the private banking arm of Morgan Stanley ("MSPB") which is FDIC

insured, so as to falsely satisfy the law and federal statute, and finally, that the adjudication of Brennerman's direct appeal

by the Second Circuit U.S. Court of Appeals was erroneous where the Second Circuit panel Court intentionally generalized

Morgan Stanley as a single entity without considering the trial records which Judge Sullivan now succinctly outline in his Jan.

3, 2023 promulgation.

Judge Sullivan further cites to other erroneous promulgation by the Second Circuit panel Court with respect to the ICBC

document including the transaction underwriting file, where they falsely stated: "[t]he only indication that such documents

are extant comes from Brennerman's bare assertion." Brennerman II, 818 F. App'x at 30. This was even after Brennerman

submitted the trial records with his Collateral Attack petition which demonstrated that government witness, Julian Madget

testified on record that the ICBC document including the underwriting file which documents the basis for ICBC approving the

finance [at issue], are extant and were provided to ICBC's New York based lawyers Linklaters LLP (see 1:17-cr-0337 (RJS),

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B
--------------------------------------------------------------------------------------------------

Trial Tr. 551-554). Brennerman also submitted on record (at EFC No. 274) that ICBC's New York based lawyer Linklaters LLP

wrote to him (Brennerman) on March 14, 2022 to confirm that they are in possession of the ICBC document, however that as

a law firm, they require either an order from the Court or consent from their client to produce the ICBC document to

Brennerman. Even Judge Sullivan conceded on record at trial that government witness, Julian Madgett testified that the

ICBC documents are extant and with the bank's file in London, U.K. (see 1:17-cr-0337 (RJS), Trial Tr. 617) as "Exhibit D"

A copy of excerpt from Julian Madgett's trial testimony testifying that the ICBC documents are extant and with their New

York based lawyers is appended to this correspondence as "Exhibit E"

Given the above and pursuant to Judge Sullivan's own promulgation on record (see appended "Exhibits A & B"), this Court

(Judge Sullivan) exhibited partiality, first, by convicting and sentencing Brennerman for bank fraud and bank fraud

conspiracy where the Court lacked jurisdiction; second, by convicting Brennerman for bank fraud and bank fraud conspiracy

where no conduct violated the federal bank fraud statute; third, by this Court (Judge Sullivan) intentionally misrepresenting

(fabricating) the evidence during sentencing, on Nov. 19. 2018, by surreptitiously supplanting a non-FDIC insured institution

MSSB with MSPB, a FDIC insured institution, so as to falsely satisfy the law and the federal bank fraud statute to convict and

imprison Brennerman.

Supreme Court precedent makes clear that a criminal defendant tried by a partial judge is entitled to have his conviction

set aside no matter how strong the evidence against him. See Edward v. Balisok, 520 U.S. 641, 647, 117 S. Ct. 1684, 13 L.

Ed 2d 906 (1997); Arizona v. Fulminante, 499 U.S. 279, 308, 111 S. Ct. 1246, 113 L. Ed 2d 302 (1991). Hence, the entire

case and conviction should be set aside.

This correspondence and the appended exhibits are submitted pursuant to Federal Rule of Criminal Procedure 49(b)(2)(B)(i)

in reliance on Federal Rule of Criminal Procedure 49(b)(5).

CONCLUSION

For the reasons cited above, Brennerman respectfully notifies this Court of its violation of the law and Defendant's human,

civil and Constitutional rights in seeking appropriate relief.

Dated: May 11, 2023
      White Deer, Pa. 17887-1000

                                                    Respectfully submitted

                                                    /s/ Raheem J. Brennerman
                                                    RAHEEM JEFFERSON BRENNERMAN

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: EXHBIT A
DATE: 05/11/2023 06:40:56 PM

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT A

Excerpt of November 19, 2018 Sentencing Transcript
at: 1:17-cr-0337 (RJS), EFC No. 206:19

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

Case 1:17-cr-00337-RJS   Document 298   Filed 05/22/23   Page 8 of 26
Case 18-3546, Document 223-2, 02/22/2021, 3040457, Page33 of 61
Case 1:17-cr-00337-RJS   Document 206   Filed 12/27/18   Page 19 of 71          19

IBJQBREs

1    are distinct crimes but they all involve the same conduct; in

2    most cases you group them all together and you do an analysis

3    all together.  You don't count them separately and add them up.

4    You do them together.  So the conspiracy to commit bank and

5    wire fraud, the bank fraud and the wire fraud are all treated

6    together, and they're all covered by the same guidelines

7    provision, which is Section 2B1.1.  That's the general fraud

8    provision under the guidelines.

9            Now, I do think, frankly, that it's worth pointing out

10   that the bank fraud calculation here I think would be quite

11   different than the wire fraud, and I guess I want to hear from

12   the parties on that.  But the bank fraud here was a scheme or

13   artifice to defraud the private banking arm of Morgan Stanley

14   to enable Mr. Brennerman to get access to the perks which are

15   tangible.  They're worth money, free checking among them.  I

16   don't get that.  And some other perks.  But also to get some

17   more intangible perks, which would be access to other arms of

18   the Morgan Stanley family of entities.

19           I'm only really focused on the first category here.

20   It seems to me the first category here, there's been no

21   evidence that I've seen that suggests that was worth more than

22   $6,500 or so.

23           Mr. Roos, do you disagree?

24           MR. ROOS:  I think that's right, your Honor.

25           THE COURT:  You agree, OK.

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: EXHIBIT B
DATE: 05/11/2023 06:41:37 PM

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT B

Excerpt of Judge Sullivan's January 3, 2023 promulgation
at: 1:17-cr-0337 (RJS), EFC No. 289

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689.

With respect to *Strickland*'s second prong, a "reasonable probability" that the outcome would have been different but for counsel's deficient performance is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[A]n 'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 691). In other words, to find prejudice, a court must conclude that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* (quoting *Strickland*, 466 U.S. at 686).

Brennerman claims that he received ineffective assistance because his trial counsel failed to argue that Morgan Stanley Smith Barney, LLC was not an FDIC-insured institution as required for bank fraud. He also asserts that his counsel should have obtained and introduced at trial ICBC's underwriting file and his birth certificate to "demonstrate his innocence." (Petition at 41.) None of these arguments is persuasive.

As an initial matter, the record reveals that Brennerman's counsel vigorously pursued the FDIC issue before the jury. For instance, counsel elicited testimony from a government witness that Morgan Stanley Smith Barney, LLC was not insured by the FDIC. (Tr. at 1059:9–11.) He further elicited testimony that affiliate entities within a corporate family – like Morgan Stanley Smith Barney, LLC and Morgan Stanley & Company LLC – must obtain "separate certificate[s] of insurance to be FDIC insured." (Tr. at 1060:24–1061:5.) In summation, Brennerman's counsel again argued that "the law absolutely requires that the bank . . . targeted in a fraud . . . be insured by the FDIC" (Tr. at 1538:9–10), and that "Brennerman was not looking to take . . . money" from

6

"the wealth management arm of Morgan Stanley, . . . the only arm of Morgan Stanley [at issue] that . . . was FDIC insured" (Tr. at 1539:9–14). In short, Brennerman's allegation that his counsel failed to press the FDIC argument before the jury is plainly contradicted by the record. *See Slevin v. United States*, 234 F.3d 1263 (2d Cir. 2000) (agreeing with the district court that the defendant failed to establish an ineffective-assistance claim because the defendant's allegations were "contradicted in several instances by evidence in the record"); *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009) (collecting cases). As a result, Brennerman's "bald assertion[s]" to the contrary are insufficient to meet either prong of the *Strickland* standard. *United States v. Blau*, 159 F.3d 68, 75 (2d Cir. 1998).

Brennerman's remaining allegations of ineffective assistance also fail. First, Brennerman argues that his counsel should have requested that the Court "order and compel" the production of ICBC's "pertinent underwriting file." (Petition at 39.) But as the Second Circuit ruled on direct appeal, the underwriting file allegedly possessed by ICBC was outside the scope of the government's disclosure obligations, and "[t]he only indication that such documents are extant comes from Brennerman's bare assertions." *Brennerman II*, 818 F. App'x at 30. This Court also previously denied Brennerman's discovery requests of the underwriting file on numerous occasions, finding, among other things, that this Court has no jurisdiction over ICBC – "a foreign bank located approximately 3,500 miles from the courthouse." (Doc. No. 249 at 2 (quoting *United States v. Brennerman*, No. 17-cr-155 (LAK), 2017 WL 4513563, at *2 (S.D.N.Y. Sept. 1, 2017)); *see also* Doc. Nos. 242, 249, 251, 253, 255.) Because it would have been "futile or frivolous" for trial counsel to request that the Court compel production of unspecified documents from an entity that was beyond the Court's jurisdiction, *United States v. Nersesian*, 824 F.2d 1294, 1322 (2d Cir. 1987), the Court cannot say that trial counsel's failure to make such a request "fell below an

7

TRULINCS  54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: EXHIBIT C
DATE: 05/11/2023 06:42:31 PM

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT C

Government Exhibits - GX1-57; Gx1-57A; GX1-73; GX529
adduced at trial and submitted by Brennerman on record
at: 1:17-cr-0337 (RJS), EFC No. 167, demonstrating that
Brennerman interacted with Morgan Stanley Smith Barney, LLC

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

| | |
|---|---|
| **From:** | BRENNERMAN, R. J @The Executive Office |
| **To:** | Stout, Scott |
| **Cc:** | BRENNERMAN R. J@Executive Office |
| **Subject:** | Re: Morgan Stanley (Wealth Management) |
| **Date:** | Tuesday, January 8, 2013 9:09:49 AM |
| **Attachments:** | Morgan Stanley (Client Profile).pdf |
| **Importance:** | High |

Dear Scott,

As discussed, attached is the completed forms, as advised the account will be in the corporate name however you wanted me to also complete a form with personal information. As discussed, I will require Debit Card and AMEX card with the account.

Please let know what are the next steps.

Best Regards

**From:** Stout, Scott
**Sent:** Monday, December 10, 2012 1:10 PM
**To:** mailto:rbrennerman@blacksandspacific.com
**Subject:** RE: 2013 Preparation

Hi RJ,

Just a reminder to get those forms to me so I can get everything in order prior to our lunch on Friday.

Thanks,
Scott

Scott Stout
F.A. - Wealth Management
**MorganStanley**
Direct: 310 205 4912
9665 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

http://www.morganstanley.com/fa/scott.stout
scott.stout@morganstanley.com

GOVERNMENT
EXHIBIT
1-57
17 Cr. 337 (RJS)

9065 Wilshire Boulevard
Suite 600 Beverly Hills, CA 90212

MorganStanley
SmithBarney

*Kindly provide all personal information.*
*For additional owners, please complete a 2ⁿᵈ profile.*

Full Name KAHEEM JEFFERSON BRENNERMAN

Address 245 PARK AVENUE, 39 FL

City NEW YORK          State NEW YORK          Zip Code 10167

Home Phone _____     Business _____

Cell 917 699 6430          Fax 310 861 1057

SS# or Tax ID ███████████          US Citizen Ⓨ N

Marital Status Single     #of Dependents N/A     Date of Birth 04/21/78

E-mail Address xbrennerman @ blacksands pacific.com

Telephone access Prompts _____     Mother's Maiden Name _____

City of Birth_____ or 1ˢᵗ School Attended DWIGHT

Employer BLACKSANDS PACIFIC ENERGY CORPORATION

Nature of Business OIL & GAS          Occupation OIL & GAS EXECUTIVE

Est. Annual Compensation $ 720,000 (BASE SALARY)  Employed Since 2010

**Primary Source of Income-Check all that apply**

Annual Salary X  Investments X  Retirement Assets____  Amount $_____

Est. Total Annual Income (all sources)_____

Est. Liquid Net Worth $ 45m _____ Est. Total Net Worth $_____

Tax Bracket (percentile)_____

**Investment Objectives: (*Please rank 1 through 4, in order of priority*)**

Growth 1X  Current Income 3  Tax Deferral 4  Liquidity X 2

Investing Since (*year*)   Stocks 99  Bonds 99  Commodities 01  Options 02

Risk Tolerance (check one)   Aggressive ___ Moderate X Conservative ____

Speculation Yes_____ No_____

*Primary Financial Need: (circle one)*
(Wealth Accumulation)    Major Purchase    Healthcare    Education
Estate Planning          Retirement        Charity       Income

Outside Investments: ____  Firms Used: _____
Equities $_____ Fixed Income $_____ Cash$_____ Alt Investments_____
Time Horizon _____ Liquidity Needs _____

Are you or anyone in your household a major share holder in a publicly traded company? Y Ⓝ
Are you an executive of a publicly traded company? Y Ⓝ
Do you or anyone in your immediate family work for a brokerage house? Y Ⓝ
Is anyone in your immediate family employed by CitiGroup? Y Ⓝ

_(signature)_  1/5/13

*Please sign and date above*

**In order to open your account we are required to obtain this information. Thank you for
assisting us.**
**THIS INFORMATION WILL REMAIN CONFIDENTIAL 02/2012**

GOVERNMENT
EXHIBIT
1-57A
17 Cr. 337 (RJS)

9665 Wilshire Boulevard
Suite 660 Beverly Hills, CA 90212

MorganStanley
SmithBarney

**Kindly provide all personal information.**
**For additional owners, please complete a 2nd profile.**

Full Name ___JEFFERSON III HOLDINGS LLC___

Address ___3960 HOWARD HUGHES PARKWAY, SUITE 500___

City ___LAS VEGAS___    State ___NEVADA___    Zip Code ___89169___

Home Phone _____    Business _____

Cell ___917699 6430___    Fax _____

SS# or Tax ID ███████████    US Citizen (Y) N

Marital Status ___N/P___    #of Dependents _____    Date of Birth _____

E-mail Address _____

Telephone access Prompts    Mother's Maiden Name _____

City of Birth_____ or 1st School Attended ___DWIGHT___

Employer _____

Nature of Business ___INVESTMENTS___    Occupation _____

Est. Annual Compensation $_____    Employed Since _____

**Primary Source of Income-Check all that apply**

Annual Salary_____ Investments_____ Retirement Assets_____ Amount $_____

Est. Total Annual Income (all sources)_____

Est. Liquid Net Worth $_____Est. Total Net Worth $_____

Tax Bracket (percentile)_____

**Investment Objectives:** (*Please rank 1 through 4, in order of priority*)

Growth ___1___ Current Income ___2___ Tax Deferral ___3___ Liquidity ___4___

Investing Since (*year*)    Stocks ___99___ Bonds ___99___ Commodities ___01___ Options ___02___

Risk Tolerance (check one)    Aggressive ___ Moderate ___X___ Conservative ___

Speculation Yes_____No_____

**Primary Financial Need: (circle one)**

Wealth Accumulation    Major Purchase    Healthcare    Education
(Estate Planning)    Retirement    Charity    Income

Outside Investments:    Firms Used: _____
**Equities** $_____ **Fixed Income** $_____ **Cash** $_____ **Alt Investments**_____
**Time Horizon** _____ **Liquidity Needs** _____

Are you or anyone in your household a major share holder in a publicly traded company?  Y  N
Are you an executive of a publicly traded company?  Y  N
Do you or anyone in your immediate family work for a brokerage house?  Y  N
Is anyone in your immediate family employed by CitiGroup?  Y  N

___[signature]___   ___1/5/13___
**Please sign and date above**

In order to open your account we are required to obtain this information.  Thank you for
assisting us.
THIS INFORMATION WILL REMAIN CONFIDENTIAL 02/2012

# Morgan Stanley

CLIENT STATEMENT | For the Period January 1-31, 2013

#BWNJGWM

RAHEEM JEFFERSON BRENNERMAN
245 PARK AVENUE
39 FLOOR
NEW YORK NY 10167-4000

**Your Branch**
9665 WILSHIRE BLVD STE 600
BEVERLY HILLS, CA 90212
Telephone: 310-285-2600
Alt. Phone: 800-458-9838
Fax: 310-285-2696

**Client Interaction Center**
800-869-3326
24 Hours a Day, 7 Days a Week

Access your accounts online
www.morganstanley.com/online

| | |
|---|---|
| TOTAL VALUE LAST PERIOD (as of 12/31/12) | 200,000.00 |
| NET CREDITS/DEBITS | □ |
| CHANGE IN VALUE | 0.88 |
| TOTAL VALUE OF YOUR ACCOUNT (as of 1/31/13) | $200,000.88 |

(Total Values include accrued interest)

**Your Financial Advisor**

Scott Stout

*Morgan Stanley Smith Barney LLC. Member SIPC.*

GOVERNMENT
EXHIBIT
529
17 Cr. 337 (RJS)

197 - 012515 - 054 - 1 - 0

| From: | BRENNERMAN, R. J @The Executive Office |
|-------|----------------------------------------|
| To: | Stout, Scott |
| Cc: | Gevarter, Mona |
| Subject: | Re: Platinum AMEX |
| Date: | Wednesday, January 9, 2013 7:24:39 PM |
| Importance: | High |

Dear Mona,

Are you able to call me on my cellphone 917 699 6430 regarding the email below

Best Regards

**From:** Stout, Scott
**Sent:** Wednesday, January 09, 2013 4:45 PM
**To:** mailto:rbrennerman@blacksandspacific.com
**Cc:** Gevarter, Mona
**Subject:** Platinum AMEX

RJ,

Please give Mona a call to set up your Platinum AMEX card.  310 205 4751.

As a Morgan Stanley perk, if you spend $100k annually we deposit $500 into your account to cover your annual fee ($450).

Other MS/Platinum Perks Include:
-   First Class Lounge Access
-   $200 annually in airline fee credits (checking bags, etc)
-   No foreign transaction fees
-   Premium upgrades for car rentals
-   Concierge
-   20% Travel Bonus

Scott Stout
F.A. - Wealth Management
MorganStanley
Direct: 310 205 4912
9665 Wilshire Blvd., 6th Floor
Beverly Hills, CA 90212

http://www.morganstanley.com/fa/scott.stout
scott.stout@morganstanley.com

Important Notice to Recipients:

GOVERNMENT
EXHIBIT
1-73
17 Cr. 337 (RJS)

Please do not use e-mail to request, authorize or effect the purchase or sale of any security or commodity. Unfortunately, we cannot execute such instructions provided in e-mail. Thank you.

The sender of this e-mail is an employee of Morgan Stanley Smith Barney LLC ("Morgan Stanley"). If you have received this communication in error, please destroy all electronic and paper copies and notify the sender immediately. Erroneous transmission is not intended to waive confidentiality or privilege. Morgan Stanley reserves the right, to the extent permitted under applicable law, to monitor electronic communications. This message is subject to terms available at the following link: http://www.morganstanley.com/disclaimers/mssbemail.html. If you cannot access this link, please notify us by reply message and we will send the contents to you. By messaging with Morgan Stanley you consent to the foregoing.

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

--------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: EXHIBIT D
DATE: 05/11/2023 06:44:05 PM

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT D

Excerpt of Trial transcript at: 1:17-cr-0337 (RJS), Trial Tr. 617
where Judge Sullivan acknowledged that government witness,
Julian Madgett testified that the ICBC document including the
underwriting file are extant and with the bank's file in London,
United Kingdom

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

1            MS. FRITZ:  Your Honor, your Honor, no.  We have it

2      here, but --

3            THE COURT:  You haven't served it yet?

4            MS. FRITZ:  We wanted to hear what your Honor said.

5            THE COURT:  In any event, the witness has indicated he

6      doesn't possess the documents, so the documents are not with

7      him.  He doesn't have them.  According to his testimony,

8      they're in London with the bank's files that he turned over

9      once the deal went south.  He certainly said he didn't review

10     them in preparation for his testimony.  He doesn't possess them

11     now.

12            So, to the extent the bank is subpoenaed with a Rule

13     17 subpoena, then that would be a different issue, but I don't

14     think serving Mr. -- who is the lawyer, Mr.?

15            MR. HESSLER:  Hessler, your Honor.

16            THE COURT:  Yes, Mr. Hessler.  I'm sorry.

17            I don't think serving Mr. Hessler is adequate service

18     for purposes of the bank.

19            MS. FRITZ:  Let me explain why we did it that way,

20     because initially last night, we had an ICBC subpoena drafted,

21     and the reason that we did it this way is, again, I don't

22     necessarily agree with your Honor's definition of possession.

23     I do think that Julian Madgett, I think quite plainly, has

24     access to these documents.  People very rarely walk around with

25     the documents that you're asking for from them, but they do

TRULINCS 54001048 - BRENNERMAN, RAHEEM J - Unit: ALF-U-B

---------------------------------------------------------------------------------------------------

FROM: 54001048
TO:
SUBJECT: EXHIBIT E
DATE: 05/11/2023 06:45:07 PM

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

EXHIBIT E

Excerpt of Trial Transcript at: 1:17-cr-0337 (RJS), Trial Tr. 551-554
where government witness, Julian Madgett testified that the ICBC
document including the underwriting file which documents the basis
for the bank, ICBC, approving the finance [at issue] was provided to
the bank's New York based lawyers Linklaters LLP who then transmitted
the documents to the United States Attorney office.

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx

                              Madgett - cross

1                (Jury present)

2                THE COURT:  Okay.  Have a seat.  We will now begin the

3   cross-examination of Mr. Madgett by Mr. Waller.

4   CROSS EXAMINATION

5   BY MR. WALLER:

6   Q.  Good afternoon, Mr. Madgett.

7   A.  Good afternoon.

8   Q.  When did you say you started working for ICBC?

9   A.  2009.

10  Q.  And you work for ICBC in London, correct?

11  A.  Correct.

12  Q.  And it is a subsidiary of a Chinese bank?

13  A.  It is a subsidiary and a branch of a Chinese bank.

14  Q.  ICBC London is not FDIC insured; is that correct?.

15  A.  You are referring to the U.S. arrangement?

16  Q.  That's correct.

17  A.  No, it would not be because it's an operation in the U.K.

18  Q.  When your credit committee makes a decision, a credit

19  decision whether or not to give a loan or not to give a loan,

20  what sort of documentation does it produce?  Does it produce a

21  memo that explains its reasons or analysis for giving a loan?

22  A.  The credit committee will have a series of minutes which

23  reflects a discussion of the case in credit committee and

24  records the decision of the credit committee.

25  Q.  Did you ever produce the documents from that credit

                    SOUTHERN DISTRICT REPORTERS, P.C.

HBT5bre7                         Madgett - cross

1    committee, the ones you just described, to the government?

2            MR. ROOS:  Objection.

3            THE COURT:  You can answer.

4    A.  To my knowledge, no.  But I need to state perhaps it's

5    appropriate to say this:  After the loan was defaulted, the

6    internal process of the bank means that the direct relationship

7    managers who were responsible for that dialogue step away and

8    the defaulted loan is then passed to a different department.

9    So, I'm not fully aware of all aspects of what has happened to

10   the management of the loan after around April 2014.

11   Q.  And when I say produced to the government, I meant to the

12   prosecutors here in this case.  You understood that?

13   A.  I understood that and to my knowledge, no, that has not

14   been the case.

15   Q.  But ICBC did produce a lot of documents to the government,

16   correct?

17   A.  All I can state is that the documents were provided to our

18   legal advisors and then our legal advisors have interacted with

19   the U.S. Attorney's office.

20   Q.  Would it be fair to say that some documents that are in the

21   underwriting file for ICBC were produced to the document and

22   others were not?

23   A.  Some documents will have been passed across.  I do not know

24   whether or not all or some.  I'm not in -- I don't have that

25   knowledge.

1   Q.   Is there an underwriting file for a loan application such

2   as the one we are dealing with in this case?

3   A.   There would be a credit application document which is where

4   the case for making the loan has been summarized, and that is

5   the credit application document which then goes to credit

6   committee for approval or decline.

7   Q.   Do you know if that -- well who would have prepared that

8   document?

9   A.   I would have been one of the main authors of that document.

10  Q.   Do you know if that document was produced to the

11  government?

12  A.   I do not and I wouldn't see great relevance in it, but I do

13  not know if it has gone to the government.

14  Q.   Well, relevance is not really your determination, correct?

15  A.   Correct, correct.   Yes.

16  Q.   So you don't know if it was produced to the government and

17  it certainly wasn't produced to the defense, correct, by ICBC?

18           THE COURT:   Well, do you know?

19           THE WITNESS:   I don't know, but I'm assuming from your

20  question that it wasn't.

21           THE COURT:   Well, don't assume.

22           THE WITNESS:   Okay, sorry.   My apologies.

23           THE COURT:   The jury knows not to assume anything from

24  a question.   So, you just answer as to what you know.

25           THE WITNESS:   All right.

1    BY MR. WALLER:

2    Q.   Was there an answer?

3    A.   Could you repeat the question, please?

4    Q.   Yes.

5            Do you know if that document that we were talking

6    about was ever produced?

7            THE COURT:   He answered.   He said I don't know.

8            THE WITNESS:   I don't know.

9            THE COURT:   And then he started assuming things and

10   that's when I jumped in.

11   BY MR. WALLER:

12   Q.   So the answer is you don't know?

13   A.   I don't know.

14   Q.   Now, you first met Mr. Brennerman in 2011, correct?

15   A.   Yes.

16   Q.   Did you meet him in person for a meeting?

17   A.   Yes.

18   Q.   Jumeirah Carlton Tower Hotel, does that sound right?

19   A.   On one occasion I met him in a hotel, yes.

20   Q.   At that point when you met him I think you testified that

21   there were no firm deals that he was bringing to you at that

22   point?   There were no deals that he was bringing to you, he was

23   just making an introduction?

24   A.   When the initial interaction between us started, yes.

25   Q.   And, do you recall when the first deal was that he brought

RECEIVED
SDNY PRO SE OFFICE

2023 MAY 15 PM 3:44



CERTIFIED MAIL
7020 1810 0001 4638 4827

⟨⟩54001-048⟨⟩
Raheem J Brennerman
FCC Allenwood LOW
1000 P O Box
Union B Unit
White DEER, PA 17887-1000
United States

⟨⟩54001-048⟨⟩
Clerk Of Court
Daniel Patrick Moynihan
500 Pearl ST
U.S. District Court
NEW YORK, NY 10007
United States

USM P3
SDNY

U.S. POSTAGE PAID
FCM LG ENV
WHITE DEER, PA
17887
MAY 12, 23
AMOUNT
$0.00
R2305K138953-01

RDC 99

10007