UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| -v- | No. 17-cr-337 (RJS) |
| RAHEEM J. BRENNERMAN, | ORDER |
| Defendant. | |

RICHARD J. SULLIVAN, Circuit Judge:

Defendant Raheem J. Brennerman, who is principally serving a 144-month prison sentence for bank and wire fraud, moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"). (Doc. No. 317 ("Am. Mot.").) For the following reasons, Brennerman's motion is DENIED.

**I.  Background**

In 2013, Brennerman engaged in a scheme to procure $600 million in financing from a foreign subsidiary of the Industrial and Commercial Bank of China Limited ("ICBC"), ostensibly to purchase the Cat Canyon Oil Field and the company that owned it, ERG. (Doc. No. 307 ("PSR") ¶ 12.) During the negotiations for that transaction, Brennerman made numerous false statements touting the purported success of his company, Blacksands Pacific, including that Blacksands Pacific was a major player in the worldwide oil and gas industry; that Blacksands Pacific held over a billion dollars in long-term assets and was generating over $80 million in revenue; that Blacksands Pacific had offices across the United States and employed around 100 people; and that Blacksands Pacific already had an agreement in place to acquire ERG and the Cat Canyon Oil Field. (*Id.* ¶ 13.)

To effectuate his deception, Brennerman provided ICBC with "fraudulent documents, emails written by fake employees, doctored financial statements, and at least one fraudulent check written in the amount of approximately $11 million." (*Id.* ¶ 14.) Based on these misrepresentations, ICBC provided a $20 million bridge loan to a Blacksands Pacific subsidiary, Blacksands Alpha, with $5 million of that loan becoming immediately available. (*Id.* ¶¶ 11, 15.) ICBC also committed to lending an additional $70 million to Blacksands Alpha in the future. (*Id.* ¶ 15.) Within days of Blacksands Alpha receiving the funds from ICBC, Brennerman transferred at least $1.4 million to his personal account, which he subsequently used to pay his personal expenses, including a $40,000 watch, hotel bills, and personal travel costs; he later transferred the balance of the $5 million received from ICBC into another account. (*Id.* ¶ 16.) During the course of the scheme, Brennerman also applied for and received an executive visa from the U.S. Department of State based on false information that he provided in his application. (*Id.* ¶ 17.)

In May 2017, a grand jury sitting in this District returned a four-count indictment charging Brennerman with conspiracy to commit bank and wire fraud in violation of 18 U.S.C. § 1349; bank fraud in violation of 18 U.S.C. §§ 2 and 1344; wire fraud in violation of 18 U.S.C. §§ 2 and 1343; and visa fraud in violation of 18 U.S.C. § 1546(a). (Doc. No. 1 ¶¶ 1–17.) Following a trial, the jury found Brennerman guilty on all counts. (PSR ¶ 7.)

At sentencing, the Court determined that Brennerman's base offense level for the wire fraud count was 7. (Doc. No. 206 ("Sent'g Tr.") at 21:15–16.) The Court then applied a twenty-level enhancement based on the loss amount exceeding $9.5 million (*id.* at 25:14–17), a two-level enhancement in light of Brennerman's use of sophisticated means in carrying out the scheme (*id.* at 26:9–10), a two-level enhancement for victimizing a financial institution (*id.* at 26:11–16), and a two-level enhancement for obstructing justice (*id.* at 35:24–36:1), resulting in a total offense

level of 33 (*id.* at 36:6–11). Regarding Brennerman's criminal history, the Court noted that his only prior conviction was for criminal contempt, which (as "part of the instant offense," U.S.S.G. § 4A1.2(a)(1)) did not result in any criminal history points, putting him in Criminal History Category I. (Sent'g Tr. at 36:12–15.) The Court therefore concluded that Brennerman's advisory Guidelines range was 135 to 168 months' imprisonment. (*Id.* at 36:21–24.)

After considering the factors set forth in 18 U.S.C. § 3553(a), the Court ultimately sentenced Brennerman to 144 months' imprisonment for the conspiracy, bank fraud, and wire fraud counts, and 120 months' imprisonment for the visa fraud count, to run concurrently. (*Id.* at 68:20–25.) The Court also ordered that Brennerman's sentence run consecutive to the twenty-four-month sentence imposed by Judge Kaplan in the related criminal contempt case. (*Id.* at 69:1–2.) Brennerman appealed his conviction and sentence, which the Second Circuit affirmed. *See United States v. Brennerman*, 818 F. App'x 25, 30 (2d Cir. 2020). Among many other motions, Brennerman later filed a *pro se* omnibus motion that the Court liberally construed to include a habeas petition under 28 U.S.C. § 2255. *See United States v. Brennerman*, No. 17-cr-337 (RJS), 2023 WL 24256, at *1 (S.D.N.Y. Jan. 3, 2023). The Court denied that motion and declined to issue a certificate of appealability. *Id* at *5.

Brennerman now moves for sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the Guidelines, seeking to reduce his sentence to 111 months' imprisonment. (Am. Mot. at 1, 6.)[1] The government does not dispute that Brennerman is eligible for a sentence reduction under Amendment 821 and does not object to a reduction in Brennerman's sentence to

---

[1] In his original *pro se* motion, Brennerman also sought to compel discovery from the law firm that represented ICBC in the $20 million bridge loan transaction. (Doc. No. 309 at 4.) But because Brennerman declined to make that request in his amended motion, the Court does not address it here. Brennerman's amended motion also sought compassionate release under 18 U.S.C. 3582(c)(1)(A)(i). (Am. Mot. at 1.) Brennerman, however, later withdrew that portion of his amended motion. (Doc. No. 320 at 1.)

3

135 months, while acknowledging that the Court has discretion to deny Brennerman's motion in full. (Doc. No. 319 ("Gov't Ltr.") at 1.)

## II. Discussion

In general, federal courts "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). A court, however, may reduce the sentence "of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.* § 3582(c)(2). To determine whether such a term should be modified, a court must apply a two-step test. First, the court must determine "whether the defendant is eligible for a reduction by calculating the Guidelines range that would have been applicable had the amended Guidelines been in place at the time the defendant originally was sentenced." *United States v. Williams*, 102 F.4th 618, 623 (2d Cir. 2024) (internal quotation marks omitted). Second, if the defendant *is* eligible, the court must then "consider whether a sentence reduction is warranted based on the sentencing factors in section 3553(a) and any applicable policy statements issued by the Sentencing Commission." *Id.*

Here, the Court finds, and the government does not dispute, that Brennerman is eligible for a two-level reduction under Amendment 821. (*See* Gov't Ltr. at 1.) Amendment 821 – which took effect on November 1, 2023 – applies retroactively and provides a two-level reduction in the offense level for defendants who have no criminal history points and whose offenses did not involve any of the aggravating circumstances listed in the Amendment. *See* U.S.S.G. § 4C1.1(a). At the time of his sentencing, Brennerman had no criminal history points (Sent'g Tr. at 36:12–15) and was subject to none of the exclusions in U.S.S.G. § 4C1.1(a). As a result, Brennerman would have been entitled to a two-level reduction in his offense level, resulting in a Guidelines range of

108 to 135 months' imprisonment – lower than the range of 135 to 168 months that applied at the time of his sentencing.

But the fact that Brennerman is eligible for a sentence reduction under Amendment 821 and section 3582(c)(2) does not end the inquiry. And "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(2), the Court concludes that a reduction in Brennerman's sentence is not warranted.

To begin, the nature and circumstances of Brennerman's fraud were truly exceptional. As the Court noted before imposing sentence, Brennerman stood out as one of "the most dishonest people [the Court has] encountered." (Sent'g Tr. at 65:7–8.) Brennerman's scheme relied on fraudulent documents, fake corporations, and "the use of legitimate law firms to add the venire or appearance of legitimacy." (*Id.* at 25:20–25; *see also* PSR ¶ 14 (noting that Brennerman used "fraudulent documents, emails written by fake employees, doctored financial statements, and at least one fraudulent check written in the amount of approximately $11 million").) Brennerman "lie[d] at the drop a hat and indiscriminately even when [it was] unnecessary," and the lies he told in furtherance of the scheme "were all designed to get [him] free and easy money" and "to allow [him] to live at a very high level." (Sent'g Tr. at 64:10–14.) All told, Brennerman's fraud "was very sophisticated and very thorough, incredibly bold [and] incredibly ambitious." (*Id.* at 25:25–26:1.) It was an "absolutely unapologetic con to get as much as [he] could by saying whatever [he] needed to say to whomever." (*Id.* at 26:3–5.) Under these circumstances, the Court remains convinced that Brennerman's original sentence is necessary to reflect the seriousness of his offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence under section 3553(a).

At sentencing, the Court also observed that Brennerman displayed a striking lack of remorse, describing him as "incorrigible" and "unrepentant." (*Id.* at 66:17.) Those observations still hold true today. Indeed, in the years since his sentencing, Brennerman has endeavored to "use the Court's criminal docket as his own personal Twitter account for posting musings and extraneous accusations that bear no relation to an actual request for relief." (Doc. No. 304 at 2.) He has repeatedly filed motions and sent letters to the Court containing "speculative, conjectural[,] and conclusory allegations" (Doc. No. 291 at 2–3 (internal quotation marks omitted)), with "no evidence that supports his accusation[s]" against innocent third parties. (Doc. No. 289 at 10.) Brennerman has also made "unsubstantiated and inflammatory comments regarding counsel and judicial officers in this case and [his] parallel criminal contempt case." (Doc. No. 282 at 1.) The Court therefore continues to believe that Brennerman is an "inveterate con man" who is "utterly dismissive . . . of people, of institutions, of courts, of laws, of rules [and] of . . . basic human decency." (Sent'g Tr. at 64:8–9, 65:4–6.) Brennerman's continued lack of remorse and abuse of the judicial system leads the Court to believe, as it did at sentencing, that Brennerman "will do this again . . . the minute [he] get[s] out." (*Id.* at 66:17–18.) Accordingly, the Court concludes that any reduction in Brennerman's original sentence would fail to adequately promote respect for the law, protect the public, or provide deterrence.

To be sure, Brennerman has completed a number of educational courses while incarcerated. (*See* Am. Mot., Exh. A.) The Court also recognizes that Brennerman's incarceration included "all of the difficult years of the COVID-19 pandemic" and empathizes with the tragic loss of Brennerman's mother to kidney disease during his incarceration. (Am. Mot. at 6.) But for the reasons just discussed, the Court remains convinced that Brennerman's original 144-month prison sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing as set

forth in section 3553(a).  The Court therefore concludes that any reduction in Brennerman's original sentence would be inconsistent with the objectives of sentencing.

**III.    Conclusion**

For these reasons, Brennerman's motion for a sentence reduction is DENIED.  The Clerk of Court is respectfully directed to terminate the motions pending at document numbers 309, 317, and 320.

SO ORDERED.

Dated: August 26, 2025
New York, NY

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation